# JACKSON *v.* DENNO, WARDEN.

No. 62.   Argued December 9–10, 1963.—Decided June 22, 1964.

*Daniel G. Collins* argued the cause and filed a brief for petitioner.

*William I. Siegel* argued the cause for respondent. With him on the brief was *Edward S. Silver.*

MR. JUSTICE WHITE delivered the opinion of the Court.

Petitioner, Jackson, has filed a petition for habeas corpus in the Federal District Court asserting that his conviction for murder in the New York courts is invalid because it was founded upon a confession not properly

determined to be voluntary. The writ was denied, 206 F. Supp. 759 (D. C. S. D. N. Y.), the Court of Appeals affirmed, 309 F. 2d 573 (C. A. 2d Cir.), and we granted certiorari to consider fundamental questions about the constitutionality of the New York procedure governing the admissibility of a confession alleged to be involuntary.[1] 371 U. S. 967.

## I.

On June 14, 1960, at about 1 a. m., petitioner, Jackson, and Nora Elliott entered a Brooklyn hotel where Miss Elliott registered for both of them. After telling Miss Elliott to leave, which she did, Jackson drew a gun and took money from the room clerk. He ordered the clerk and several other people into an upstairs room and left the hotel, only to encounter Miss Elliott and later a policeman on the street. A struggle with the latter followed, in the course of which both men drew guns. The

---

[1] There is no claim in this Court that the constitutionality of the New York procedural rule governing admission of confessions is not properly before us. Although it appears that this issue was not seasonably tendered to the New York courts, exhaustion requirements were satisfied and the Federal District Court ruled on the merits of the issue, as our decision last Term in *Fay* v. *Noia*, 372 U. S. 391, clearly requires:

"[W]e have consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings. State procedural rules plainly must yield to this overriding federal policy." *Id.*, at 426–427.

No one suggests that the petitioner, Jackson, "after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures," the only ground for which relief may be denied in federal habeas corpus for failure to raise a federal constitutional claim in the state courts. *Fay* v. *Noia*, 372 U. S. 391, 439. See also *Johnson* v. *Zerbst*, 304 U. S. 458.

policeman was fatally wounded and petitioner was shot twice in the body. He managed to hail a cab, however, which took him to the hospital.

A detective questioned Jackson at about 2 a. m., soon after his arrival at the hospital. Jackson, when asked for his name, said, "Nathan Jackson, I shot the colored cop. I got the drop on him." He also admitted the robbery at the hotel. According to the detective, Jackson was in "strong" condition despite his wounds.

Jackson was given 50 milligrams of demerol and 1/50 of a grain of scopolamine at 3:55 a. m. Immediately thereafter an Assistant District Attorney, in the presence of police officers and hospital personnel, questioned Jackson, the interrogation being recorded by a stenographer. Jackson, who had been shot in the liver and lung, had by this time lost about 500 cc. of blood. Jackson again admitted the robbery in the hotel, and then said, "Look, I can't go on." But in response to further questions he admitted shooting the policeman and having fired the first shot.[2] The interview was completed at 4 a. m. An

---

[2] The confession reads in pertinent part as follows:

"Q. Where did you meet the officer? A. On the street.

"Q. What happened when you met him? A. I said, 'There was a fight upstairs.'

"Q. Then what? A. He insisted I go with him so I got the best of him.

"Q. How did you get the best of him? A. I know Judo.

"Q. You threw him over? A. Yeah.

"Q. Where was your gun while you were giving him the Judo? A. In my holster.

"Q. After you threw him to the ground, did you pull your gun? Where was the holster? A. On my shoulder.

"Q. After you threw him to the ground, what did you do about your gun? A. He went for his gun.

"Q. What did you do? A. I got mine out first.

"Q. Did you point the gun at him? A. Yeah.

operation upon petitioner was begun at 5 a. m. and completed at 8 a. m.

Jackson and Miss Elliott were indicted for murder in the first degree and were tried together. The statements made by Jackson, both at 2 and 3:55 a. m., were introduced in evidence without objection by Jackson's counsel. Jackson took the stand in his own defense. His account of the robbery and of the shooting of the policeman differed in some important respects from his confession. According to Jackson's testimony, there was a substantial interval of time between his leaving the hotel and the shooting, and the policeman attempted to draw his gun first and fired the first shot. As to the questioning at the hospital, Jackson recalled that he was in pain and gasping for breath at the time and was refused water and told he would not be let alone until the police had the answers they wanted. He knew that he had been interrogated but could remember neither the questions nor the answers.

To counter Jackson's suggestion that he had been pressured into answering questions, the State offered the testimony of the attending physician and of several other persons. They agreed that Jackson was refused water, but because of the impending operation rather than his refusal to answer questions. On cross-examination of the doctor, Jackson's counsel, with the help of the hospital

---

"Q. What did you say to him? A. Told him not to be a hero.

.        .        .        .        .

"Q. How many shots did you fire at the officer? A. I don't know.
"Q. Was it more than one? A. Yeah.
"Q. Who fired first, you or the police officer? A. I beat him to it.
"Q. How many times did you fire at him? A. I don't know; twice probably.
"Q. Did he go down? Did he fall down? A. Yeah.
"Q. What did you do? A. I shot. I didn't know. I knew I was shot. While I was on the ground he fired the gun."

records, elicited the fact that demerol and scopolamine were administered to Jackson immediately before his interrogation. But any effect of these drugs on Jackson during the interrogation was denied.[3]

---

[3] The properties of these medications were described in this way:

*"By Mr. Healy:*

"Q. Could you tell us what time demerol was prescribed for him? A. From our records it was stated here. It was given at 3:55 a.m.

"Q. 3:55. Well, will that put you to sleep, demerol, Doctor? A. Well, it will make you—

"Q. Dopey? A. It will make you dopey.

"Q. And what was the other one, atropine—

"The Court: Atropine, a-t-r-o-p-i-n-e-.

*"By Mr. Healy:*

"Q. Atropine, what is that? A. Oh, it is not atropine. It is scopolamine.

"Q. What is that, Doctor? A. It dries up the secretion.

"The Court: It dries up the secretion?

"The Witness: Of the throat and the pharynges and the upper respiratory tract.

.      .      .      .      .

*"Redirect Examination by Mr. Schor:*

"Q. Doctor, you just told us that demerol makes a person dopey; right? A. Yes, sir.

"Q. How long does it take from the time it is administered until the patient feels the effect? A. Well, it manifests its action about fifteen minutes after it is injected.

"Q. Fifteen minutes later? A. About fifteen minutes later.

.      .      .      .      .

*"By Mr. Healy:*

"Q. So if a person was in good health and took demerol, the effect wouldn't be any different? A. Not much different.

.      .      .      .      .

"Q. How about a person who, for instance, has been shot through the liver, as your report shows there? Would that be the same time as for a healthy person? Do you mean that, Doctor? A. Yes, sir.

.      .      .      .      .

"Q. The report—the record shows that he had lost 500 cc's of blood. Now, I am asking you, would that make any difference in the time that this—A. I don't think so."

Although Jackson's counsel did not specifically object to the admission of the confession initially, the trial court indicated its awareness that Jackson's counsel was questioning the circumstances under which Jackson was interrogated.[4]

In his closing argument, Jackson's counsel did not ask for an acquittal but for a verdict of second-degree murder or manslaughter. Counsel's main effort was to negative the premeditation and intent necessary to first-degree murder and to separate the robbery felony from the killing. He made much of the testimony tending to show a substantial interval between leaving the hotel and the beginning of the struggle with the policeman. The details of that struggle and the testimony indicating the policeman fired the first shot were also stressed.

Consistent with the New York practice where a question has been raised about the voluntariness of a confession, the trial court submitted that issue to the jury along with the other issues in the case. The jury was told that if it found the confession involuntary, it was to disregard it entirely, and determine guilt or innocence

---

[4] "The Court: Judge Healy raised the point in cross-examination that sedation of a kind was administered to the patient.

"Mr. Healy: Some kind.

"The Court: And therefore he is going to contend and he does now that the confession hasn't the weight the law requires. Is that your purpose?

"Mr. Healy: That's correct. There are two, one statement and another statement. One statement to the police and one statement to the District Attorney.

> . . . .

"Mr. Healy: Mr. Lentini being the hearing reporter. That was taken at 3:55.

"The Court: That's the time that you say he was in no mental condition to make the statement?

"Mr. Healy: That's correct.

"The Court: Is that correct?

"Mr. Healy: That's correct."

solely from the other evidence in the case; alternatively, if it found the confession voluntary, it was to determine its truth or reliability and afford it weight accordingly.[5]

The jury found Jackson guilty of murder in the first degree, Miss Elliott of manslaughter in the first degree. Jackson was sentenced to death, Miss Elliott to a prison

---

[5] "If you determine that it was a confession, the statement offered here, and if you determine that Jackson made it, and if you determine that it is true; if you determine that it is accurate, before you may use it, the law still says you must find that it is voluntary, and the prosecution has the burden of proving that it was a voluntary confession. The defendant merely comes forward with the suggestion that it was involuntary, but the burden is upon the prosecution to show that it was voluntary.

"Under our law, a confession, even if true and accurate, if involuntary, is not admissible, and if it is left for the jury to determine whether or not it was voluntary, its decision is final. If you say it was involuntarily obtained, it goes out of the case. If you say it was voluntarily made, the weight of it is for you. So I am submitting to you as a question of fact to determine whether or not (a) this statement was made by Jackson, or allegedly made by Jackson, whether it was a voluntary confession, and whether it was true and accurate. That decision is yours.

"Should you decide under the rules that I gave you that it is voluntary, true and accurate, you may use it, and give it the weight you feel that you should give it. If you should decide that it is involuntary, exclude it from the case. Do not consider it at all. In that event, you must go to the other evidence in the case to see whether or not the guilt of Jackson was established to your satisfaction outside of the confession, beyond a reasonable doubt.

"If you should determine that Jackson made this confession, and that it was a true confession, and you have so determined from the evidence, then if you should decide that it was gotten by influence, of fear produced by threats, and if that is your decision, then reject it.

"I repeat to you again, the burden of proving the accuracy, truth, and the voluntariness of the confession always rests upon the prosecution."

There is no issue raised as to whether these instructions stated an adequate and correct federal standard for determining the voluntariness of Jackson's confession.

term. Jackson's conviction was affirmed by the New York Court of Appeals, 10 N. Y. 2d 780, 177 N. E. 2d 59, its remittitur being amended to show that it had necessarily passed upon the voluntariness of the confession and had found that Jackson's constitutional rights had not been violated. 10 N. Y. 2d 816, 178 N. E. 2d 234. Certiorari was denied here. 368 U. S. 949. Jackson then filed a petition for habeas corpus, claiming that the New York procedure for determining the voluntariness of a confession was unconstitutional and that in any event his confession was involuntary. After hearing argument and examining the state court record the District Court denied the petition without holding an evidentiary hearing. Indicating that it is the trier of fact who must determine the truth of the testimony of prisoner and official alike and resolve conflicts in the testimony, the court found "no clear and conclusive proof that these statements were extorted from him, or that they were given involuntarily." Nor was any constitutional infirmity found in the New York procedure. 206 F. Supp. 759 (D. C. S. D. N. Y.). The Court of Appeals, after noting the conflicting testimony concerning the coercion issue and apparently accepting the State's version of the facts, affirmed the conviction. 309 F. 2d 573 (C. A. 2d Cir.).

## II.

It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, *Rogers* v. *Richmond,* 365 U. S. 534, and even though there is ample evidence aside from the confession to support the conviction. *Malinski* v. *New York,* 324 U. S. 401; *Stroble* v. *California,* 343 U. S. 181; *Payne* v. *Arkansas,* 356 U. S. 560. Equally clear is the defendant's constitutional right at some stage in the proceedings

to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession. *Rogers* v. *Richmond, supra.* In our view, the New York procedure employed in this case did not afford a reliable determination of the voluntariness of the confession offered in evidence at the trial, did not adequately protect Jackson's right to be free of a conviction based upon a coerced confession and therefore cannot withstand constitutional attack under the Due Process Clause of the Fourteenth Amendment. We therefore reverse the judgment below denying the writ of habeas corpus.

## III.

Under the New York rule, the trial judge must make a preliminary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary.[6] But if the evidence presents a fair question as to its voluntariness, as where certain facts bearing on the issue are in dispute or where reasonable men could differ over the inferences to be drawn from undisputed facts, the judge "must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character and also its truthfulness." [7] *Stein* v. *New York,* 346 U. S. 156, 172. If an issue of coercion is presented, the judge may not resolve conflicting evidence or arrive at his independent appraisal of the voluntariness

---

[6] See *People* v. *Weiner,* 248 N. Y. 118, 161 N. E. 441; *People* v. *Leyra,* 302 N. Y. 353, 98 N. E. 2d 553.

[7] *People* v. *Doran,* 246 N. Y. 409, 416–417, 159 N. E. 379, 381–382; *People* v. *Leyra, supra.* Under the New York rule the judge is not required to exclude the jury while he hears evidence as to voluntariness and perhaps is not allowed to do so. *People* v. *Brasch,* 193 N. Y. 46, 85 N. E. 809; *People* v. *Randazzio,* 194 N. Y. 147, 87 N. E. 112.

378

of the confession, one way or the other. These matters
he must leave to the jury.

This procedure has a significant impact upon the de-
fendant's Fourteenth Amendment rights. In jurisdic-
tions following the orthodox rule, under which the judge
himself solely and finally determines the voluntariness
of the confession, or those following the Massachu-
setts procedure,[8] under which the jury passes on volun-
tariness only after the judge has fully and independently
resolved the issue against the accused,[9] the judge's con-

---

[8] We raise no question here concerning the Massachusetts proce-
dure. In jurisdictions following this rule, the judge hears the confes-
sion evidence, himself resolves evidentiary conflicts and gives his own
answer to the coercion issue, rejecting confessions he deems involun-
tary and admitting only those he believes voluntary. It is only the
latter confessions that are heard by the jury, which may then, under
this procedure, disagree with the judge, find the confession involun-
tary and ignore it. Given the integrity of the preliminary proceedings
before the judge, the Massachusetts procedure does not, in our opin-
ion, pose hazards to the rights of a defendant. While no more will
be known about the views of the jury than under the New York rule,
the jury does not hear all confessions where there is a fair question
of voluntariness, but only those which a judge actually and inde-
pendently determines to be voluntary, based upon all of the evidence.
The judge's consideration of voluntariness is carried out separate and
aside from issues of the reliability of the confession and the guilt or
innocence of the accused and without regard to the fact the issue may
again be raised before the jury if decided against the defendant. The
record will show the judge's conclusions in this regard and his findings
upon the underlying facts may be express or ascertainable from the
record.

Once the confession is properly found to be voluntary by the judge,
reconsideration of this issue by the jury does not, of course, improp-
erly affect the jury's determination of the credibility or probativeness
of the confession or its ultimate determination of guilt or innocence.

[9] Not all the States and federal judicial circuits can be neatly classi-
fied in accordance with the above three procedures. In many cases
it is difficult to ascertain from published appellate court opinions
whether the New York or Massachusetts procedure, or some variant
of either, is being followed. Some jurisdictions apparently leave the

clusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record. In contrast, the New York jury returns only a general verdict upon the ultimate question of guilt or innocence. It is impossible to discover whether the jury found the confession voluntary and relied upon it, or involuntary and supposedly ignored it. Nor is there any indication of how the jury resolved disputes in the evidence concerning the critical facts underlying the coercion issue. Indeed, there is nothing

---

matter entirely to the discretion of the trial court; others state the rule differently on different occasions; and still others deal with voluntariness in terms of trustworthiness, which is said to be a matter for the jury, an approach which, in the light of this Court's recent decision in *Rogers* v. *Richmond,* 365 U. S. 534, may make these cases of doubtful authority.

Because of the above-described difficulties, annotators and commentators have not attempted definitive classifications of jurisdictions following the Massachusetts procedure separate from those following the New York practice. See 170 ALR 568; 85 ALR 870; Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317 (1954); 3 Wigmore, Evidence (3d ed. 1940), § 861, n. 3.

"The formal distinction between the New York and Massachusetts procedures is often blurred in appellate opinions. Under either procedure, the trial court faced with an objection to the admissibility of a confession, must rule on that objection, i. e., must determine whether the jury is to hear the challenged confession. But the controlling question is different under the two procedures. . . . Since courts which require the ultimate submission of the voluntariness issue to the jury refer to the necessity of a judicial determination without specifying its character, it is sometimes difficult to determine which of two procedures is being approved . . . ." Meltzer, *supra,* at 323–324.

Those jurisdictions where it appears unclear from appellate court opinions whether the Massachusetts or New York procedure is used in the trial court are listed in the Appendix.

to show that these matters were resolved at all, one way or the other.

These uncertainties inherent in the New York procedure were aptly described by the Court in *Stein* v. *New York,* 346 U. S. 156, 177–178:

> "Petitioners suffer a disadvantage inseparable from the issues they raise in that this procedure does not produce any definite, open and separate decision of the confession issue. Being cloaked by the general verdict, petitioners do not know what result they really are attacking here. . . .

> This method of trying the coercion issue to a jury is not informative as to its disposition. Sometimes the record permits a guess or inference, but where other evidence of guilt is strong a reviewing court cannot learn whether the final result was to receive or to reject the confessions as evidence of guilt. Perhaps a more serious, practical cause of dissatisfaction is the absence of any assurance that the confessions did not serve as makeweights in a compromise verdict, some jurors accepting the confessions to overcome lingering doubt of guilt, others rejecting them but finding their doubts satisfied by other evidence, and yet others or perhaps all never reaching a separate and definite conclusion as to the confessions but returning an unanalytical and impressionistic verdict based on all they had heard."

A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined. But did the jury in Jackson's case make these critical determinations, and if it did, what were these determinations?

Notwithstanding these acknowledged difficulties inherent in the New York procedure, the Court in *Stein* found

no constitutional deprivation to the defendant. The Court proceeded to this conclusion on the basis of alternative assumptions regarding the manner in which the jury might have resolved the coercion issue. Either the jury determined the disputed issues of fact against the accused, found the confession voluntary and therefore properly relied upon it; or it found the contested facts in favor of the accused and deemed the confession involuntary, in which event it disregarded the confession in accordance with its instructions and adjudicated guilt based solely on the other evidence. On either assumption the Court found no error in the judgment of the state court.

We disagree with the Court in *Stein;* for in addition to sweeping aside its own express doubts that the jury acted at all in the confession matter the Court, we think, failed to take proper account of the dangers to an accused's rights under either of the alternative assumptions.

On the assumption that the jury found the confession voluntary, the Court concluded that it could properly do so. But this judgment was arrived at only on the further assumptions that the jury had actually found the disputed issues of fact against the accused and that these findings were reliably arrived at in accordance with considerations that are permissible and proper under federal law. These additional assumptions, in our view, were unsound.

The New York jury is at once given both the evidence going to voluntariness and all of the corroborating evidence showing that the confession is true and that the defendant committed the crime. The jury may therefore believe the confession and believe that the defendant has committed the very act with which he is charged, a circumstance which may seriously distort judgment of the credibility of the accused and assessment of the testimony concerning the critical facts surrounding his confession.

In those cases where without the confession the evidence is insufficient, the defendant should not be convicted if the jury believes the confession but finds it to be involuntary. The jury, however, may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession, a policy which has divided this Court in the past, see *Stein* v. *New York, supra,* and an issue which may be reargued in the jury room. That a trustworthy confession must also be voluntary if it is to be used at all, generates natural and potent pressure to find it voluntary. Otherwise the guilty defendant goes free. Objective consideration of the conflicting evidence concerning the circumstances of the confession becomes difficult and the implicit findings become suspect.[10]

---

[10] "It may be urged that the commitment of our system to jury trial presupposes the acceptance of the assumptions that the jury follows its instructions, that it will make a separate determination of the voluntariness issue, and that it will disregard what it is supposed to disregard. But that commitment generally presupposes that the judge will apply the exclusionary rules before permitting evidence to be submitted to the jury." Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317, 327 (1954). See also 9 Wigmore, Evidence (3d ed. 1940), § 2550.

"The case of a confession induced by physical or mental coercion deserves special mention. The protection which the orthodox rule or the Massachusetts doctrine affords the accused is of major value to him. A fair consideration of the evidence upon the preliminary question is essential; in this consideration the truth or untruth of the confession is immaterial. Due process of law requires that a coerced confession be excluded from consideration by the jury. It also requires that the issue of coercion be tried by an unprejudiced trier, and, regardless of the pious fictions indulged by the courts, it is useless to contend that a juror who has heard the confession can be uninfluenced by his opinion as to the truth or falsity of it. . . . The rule excluding a coerced confession is more than a rule excluding hearsay. Whatever may be said about the orthodox reasoning that its exclusion is on the ground of its probable falsity, the fact is that the considerations which call for the exclusion of a coerced confession

The danger that matters pertaining to the defendant's guilt will infect the jury's findings of fact bearing upon voluntariness, as well as its conclusion upon that issue itself, is sufficiently serious to preclude their unqualified acceptance upon review in this Court, regardless of whether there is or is not sufficient other evidence to sustain a finding of guilt. In Jackson's case, he confessed to having fired the first shot, a matter very relevant to the charge of first degree murder. The jury also heard the evidence of eyewitnesses to the shooting. Jackson's testimony going to his physical and mental condition when he confessed and to the events which took place at that time, bearing upon the issue of voluntariness, was disputed by the prosecution. The obvious and serious danger is that the jury disregarded or disbelieved Jackson's testimony pertaining to the confession because it believed he had done precisely what he was charged with doing.

The failure to inquire into the reliability of the jury's resolution of disputed factual considerations underlying its conclusion as to voluntariness—findings which were afforded decisive weight by the Court in *Stein*—was not a mere oversight but stemmed from the premise underlying the *Stein* opinion that the exclusion of involuntary confessions is constitutionally required solely because of the inherent untrustworthiness of a coerced confession. It followed from this premise that a reliable or true confession need not be rejected as involuntary and that evidence corroborating the truth or falsity of the confession and the guilt or innocence of the accused is indeed pertinent to

---

are those which call for the protection of every citizen, whether he be in fact guilty or not guilty. And the rule of exclusion ought not to be emasculated by admitting the evidence and giving to the jury an instruction which, as every judge and lawyer knows, cannot be obeyed." Morgan, Some Problems of Proof Under the Anglo-American System of Litigation (1956), 104–105.

the determination of the coercion issue.[11]   This approach in *Stein* drew a sharp dissent from Mr. Justice Frankfurter, who admonished that considerations of truth or falsity of the admissions are to be put aside in determining the question of coercion:

> "This issue must be decided without regard to the confirmation of details in the confession by reliable other evidence.   The determination must not be influenced by an irrelevant feeling of certitude that the accused is guilty of the crime to which he confessed." 346 U. S., at 200.

This underpinning of *Stein* proved to be a short-lived departure from prior views of the Court, see *Malinski* v. *New York,* 324 U. S. 401; *Lyons* v. *Oklahoma,* 322 U. S. 596, 597; *Gallegos* v. *Nebraska,* 342 U. S. 55, 63, and was unequivocally put to rest in *Rogers* v. *Richmond, supra,* where it was held that the reliability of a confession has

---

[11] "[R]eliance on a coerced confession vitiates a conviction because such a confession combines the persuasiveness of apparent conclusiveness with what judicial experience shows to be illusory and deceptive evidence.   A forced confession is a false foundation for any conviction, while evidence obtained by illegal search and seizure, wire tapping, or larceny may be and often is of the utmost verity. Such police lawlessness therefore may not void state convictions while forced confessions will do so."   346 U. S., at 192.   The Court further noted in *Stein* that the detailed confessions were "corroborated throughout by other evidence," 346 U. S., at 168, and felt it necessary to recount the context in which the confessions were obtained only from "a summary of the whole testimony," 346 U. S., at 162.   The premise that the veracity of the confession is highly pertinent to its voluntariness can also be gleaned from other statements in the opinion.   In response to an objection that the New York procedure deterred testimony from a defendant on the facts surrounding the obtaining of the confession, the Court stated: "If in open court, free from violence or threat of it, defendants had been obliged to admit incriminating facts, it might bear on the credibility of their claim that the same facts were admitted to the police only in response to beating."   *Id.,* at 175.

nothing to do with its voluntariness—proof that a defendant committed the act with which he is charged and to which he has confessed is not to be considered when deciding whether a defendant's will has been overborne. Reflecting his dissent in *Stein*, Mr. Justice Frankfurter wrote for a unanimous Court on this issue in *Rogers, supra:*

> "[T]he weight attributed to the impermissible consideration of truth and falsity . . . entering into the Connecticut trial court's deliberations concerning the admissibility of the confessions, may well have distorted, by putting in improper perspective, even its findings of historical fact. Any consideration of this 'reliability' element was constitutionally precluded, precisely because the force which it carried with the trial judge cannot be known." 365 U. S., at 545.[12]

It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary confessions not only

---

[12] *Rogers* dealt with the situation where the state trial judge and the State Supreme Court applied a legal standard of voluntariness which incorporated reliability of the confession as a relevant determinant of voluntariness, whereas there is no issue here that the jury was explicitly instructed to consider reliability in deciding whether Jackson's confession was admissible, although it should be noted that the jury was not clearly told not to consider this element. The jury is indeed told to and necessarily does consider this element in determining the weight to be given the confession. The issues of probativeness and voluntariness are discrete and have different policy underpinnings, but are often confused. See note 13, *infra.* Regardless of explicit instructions, however, we think the likelihood that these forbidden considerations enter the jury's deliberations too great for us to ignore. Under the New York procedure the jury is not asked to resolve the issue of voluntariness until after the State has carried its burden of proof on the issue of a defendant's guilt and thus not until after matters pertaining to the defendant's guilt, including matters corroborative of the confession itself, are fully explored at trial. See Morgan, note 10, *supra.*

because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the "strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will," *Blackburn* v. *Alabama,* 361 U. S. 199, 206–207, and because of "the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves." *Spano* v. *New York,* 360 U. S. 315, 320–321. Because it did not recognize this "complex of values," *Blackburn, supra,* underlying the exclusion of involuntary confessions, *Stein* also ignored the pitfalls in giving decisive weight to the jury's assumed determination of the facts surrounding the disputed confession.

Under the New York procedure, the evidence given the jury inevitably injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness. Indeed the jury is told to determine the truthfulness of the confession in assessing its probative value.[13] As a consequence, it cannot be

---

[13] The question of the credibility of a confession, as distinguished from its admissibility, is submitted to the jury in jurisdictions following the orthodox, Massachusetts, or New York procedure. Since the evidence surrounding the making of a confession bears on its credibility, such evidence is presented to the jury under the orthodox rule not on the issue of voluntariness or competency of the confession, but on the issue of its weight. Just as questions of admissibility of evidence are traditionally for the court, questions of credibility, whether of a witness or a confession, are for the jury. This is so because trial courts do not direct a verdict against the defendant on issues involving credibility. Nothing in this opinion, of course, touches upon these ordinary rules of evidence relating to impeachment.

A finding that the confession is voluntary prior to admission no more affects the instructions on or the jury's view of the reliability

assumed, as the *Stein* Court assumed, that the jury reliably found the facts against the accused.[14]  This unsound assumption undermines *Stein's* authority as a precedent and its view on the constitutionality of the New York procedure.  The admixture of reliability and voluntariness in the considerations of the jury would itself entitle a defendant to further proceedings in any case in which the essential facts are disputed, for we cannot determine how the jury resolved these issues and will not assume that they were reliably and properly resolved against the accused.  And it is only a reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant and which would permit the jury to consider the confession in adjudicating guilt or innocence.

---

of the confession than a finding in a preliminary hearing that evidence was not obtained by an illegal search affects the instructions on or the jury's view of the probativeness of this evidence.

The failure to distinguish between the discrete issues of voluntariness and credibility is frequently reflected in opinions which declare that it is the province of the court to resolve questions of admissibility of confessions, as with all other questions of admissibility of evidence, the province of the jury to determine issues of credibility, but which then approve the trial court's submission of the voluntariness question to the jury.  Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317, 320–321 (1954).

[14] Another assumption of *Stein*—that a criminal conviction can stand despite the introduction of a coerced confession if there is sufficient other evidence to sustain a finding of guilt and if the confession is only tentatively submitted to the jury—an assumption also related to the view that the use of involuntary confessions is constitutionally proscribed solely because of their illusory trustworthiness, has also been rejected in the decisions of this Court.  It is now clear that reversal follows if the confession admitted in evidence is found to be involuntary in this Court regardless of the possibility that the jury correctly followed instructions and determined the confession to be involuntary.  *Haynes* v. *Washington*, 373 U. S. 503; *Spano* v. *New York*, 360 U. S. 315; *Payne* v. *Arkansas*, 356 U. S. 560; *Leyra* v. *Denno*, 347 U. S. 556.

But we do not rest on this ground alone, for the other alternative hypothesized in _Stein_—that the jury found the confession involuntary and disregarded it—is equally unacceptable. Under the New York procedure, the fact of a defendant's confession is solidly implanted in the jury's mind, for it has not only heard the confession, but it has been instructed to consider and judge its voluntariness and is in position to assess whether it is true or false. If it finds the confession involuntary, does the jury—indeed, can it—then disregard the confession in accordance with its instructions? If there are lingering doubts about the sufficiency of the other evidence, does the jury unconsciously lay them to rest by resort to the confession? Will uncertainty about the sufficiency of the other evidence to prove guilt beyond a reasonable doubt actually result in acquittal when the jury knows the defendant has given a truthful confession? [15]

---

[15] See _Rideau_ v. _Louisiana,_ 373 U. S. 723, 727: "But we do not hesitate to hold, without pausing to examine a particularized transcript of the _voir dire_ examination of the members of the jury, that due process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised 'interview.'" See also _Delli Paoli_ v. _United States,_ 352 U. S. 232, 248: "The Government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." (Dissenting opinion of Mr. Justice Frankfurter relating to use of a confession of a co-defendant under limiting instructions.) _Krulewitch_ v. _United States,_ 336 U. S. 440, 453: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, _cf. Blumenthal_ v. _United States,_ 332 U. S. 539, 559, all practicing lawyers know to be unmitigated fiction. See _Skidmore_ v. _Baltimore & Ohio R. Co.,_ 167 F. 2d 54." (Concurring opinion of Mr. Justice Jackson relating to limiting instructions concerning use of declarations of co-conspirators.) _Shepard_ v. _United States,_ 290 U. S. 96, 104; _United States_ v. _Leviton,_ 193 F. 2d 848, 865 (C. A. 2d Cir.), certiorari denied, 343 U. S. 946; Morgan, Functions of Judge and Jury in the Determination of Preliminary

It is difficult, if not impossible, to prove that a confession which a jury has found to be involuntary has nevertheless influenced the verdict or that its finding of voluntariness, if this is the course it took, was affected by the other evidence showing the confession was true. But the New York procedure poses substantial threats to a defendant's constitutional rights to have an involuntary confession entirely disregarded and to have the coercion issue fairly and reliably determined. These hazards we cannot ignore.[16]

As reflected in the cases in this Court, police conduct requiring exclusion of a confession has evolved from acts of clear physical brutality to more refined and subtle methods of overcoming a defendant's will.

> "[T]his Court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition. A number of cases have demonstrated, if demonstration were needed, that the efficiency of the rack and the thumbscrew can be matched, given the proper subject, by more sophisti-

Questions of Fact, 43 Harv. L. Rev. 165, 168–169 (1929); Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317, 326 (1954).

[16] Further obstacles to a reliable and fair determination of voluntariness under the New York procedure result from the ordinary rules relating to cross-examination and impeachment. Although not the case here, an accused may well be deterred from testifying on the voluntariness issue when the jury is present because of his vulnerability to impeachment by proof of prior convictions and broad cross-examination, both of whose prejudicial effects are familiar. The fear of such impeachment and extensive cross-examination in the presence of the jury that is to pass on guilt or innocence as well as voluntariness may induce a defendant to remain silent, although he is perhaps the only source of testimony on the facts underlying the claim of coercion. Where this occurs the determination of voluntariness is made upon less than all of the relevant evidence. Cf. *United States* v. *Carignan,* 342 U. S. 36.

cated modes of 'persuasion.' " *Blackburn* v. *Alabama*, 361 U. S. 199, 206.[17]

Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence. See *Wilson* v. *United States*, 162 U. S. 613; *United States* v. *Carignan*, 342 U. S. 36; *Smith* v. *United States*, 348 U. S. 147.[18] Where pure

---

[17] Also see *Gallegos* v. *Colorado*, 370 U. S. 49; *Culombe* v. *Connecticut*, 367 U. S. 568; *Spano* v. *New York*, 360 U. S. 315; *Fikes* v. *Alabama*, 352 U. S. 191; *Watts* v. *Indiana*, 338 U. S. 49; *Turner* v. *Pennsylvania*, 338 U. S. 62; *Harris* v. *South Carolina*, 338 U. S. 68.

[18] In *Wilson* v. *United States*, 162 U. S. 613, an early confession case in this Court, where the trial judge first ruled on the voluntariness of the confession before submitting the issue to the jury, the procedure governing admissibility in the federal courts was stated as follows:

"When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury with the direction that they should reject the confession if upon the whole evidence they are satisfied it was not the voluntary act of the defendant. *Commonwealth* v. *Preece*, 140 Mass. 276." *Id.*, at 624.

The Court held in *United States* v. *Carignan*, 342 U. S. 36, 38, that it was reversible error for a federal court to refuse a defendant the opportunity to testify before the judge and out of the presence of the jury on the facts surrounding the obtaining of a confession claimed to be involuntary. The Court explicitly followed this holding in *Smith* v. *United States*, 348 U. S. 147, 151, when a defendant's asserted deprivation of a preliminary hearing on admissibility before the judge during the trial was rejected solely because "the trial judge had already held a hearing on this issue in passing on the pretrial motion to suppress evidence."

factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court and the trial court's determination, *pro tanto*, takes on an increasing finality. The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend.[19] In our view, the New York procedure falls short of satisfying these constitutional requirements. *Stein* v. *New York* is overruled.

## IV.

We turn to consideration of the disposition of this case. Since Jackson has not been given an adequate hearing upon the voluntariness of his confession he must be given one, the remaining inquiry being the scope of that hearing and the court which should provide it.

This is not a case where the facts concerning the circumstances surrounding the confession are undisputed and the task is only to judge the voluntariness of the confession based upon the clearly established facts and in accordance with proper constitutional standards. Here there are substantial facts in dispute: Jackson said that he was in pain from his wounds, gasping for breath and unable to talk long. A state witness described Jackson

---

[19] Whether the trial judge, another judge, or another jury, but not the convicting jury, fully resolves the issue of voluntariness is not a matter of concern here. To this extent we agree with *Stein* that the States are free to allocate functions between judge and jury as they see fit.

as in strong condition despite his wounds. According to Jackson, the police told him he could have no water and would not be left alone until he gave the answers the authorities desired. These verbal threats were denied by the State. Whereas Jackson claimed his will was affected by the drugs administered to him, the State's evidence was that the drugs neither had nor could have had any effect upon him at all. Whether Jackson is entitled to relief depends upon how these facts are resolved, for if the State is to be believed we cannot say that Jackson's confession was involuntary, whereas if Jackson's version of the facts is accepted the confession was involuntary and inadmissible.[20]

As we have already said, Jackson is entitled to a reliable resolution of these evidentiary conflicts. If this case were here upon direct review of Jackson's conviction, we could not proceed with review on the assumption that these disputes had been resolved in favor of the State for as we have held we are not only unable to tell how the jury resolved these matters but, even if the jury did resolve them against Jackson, its findings were infected with impermissible considerations and accordingly cannot be controlling here. Cf. *Rogers* v. *Richmond, supra.* Likewise, a federal habeas corpus court, in the face of the unreliable state court procedure, would not be justified in disposing of the petition solely upon the basis of the undisputed portions of the record. At the very least, *Townsend* v. *Sain,* 372 U. S. 293, would require a full evidentiary hearing to determine the factual context in which Jackson's confession was given.

---

[20] We reject Jackson's alternative claim that even the undisputed evidence in this record shows his confession to have been involuntary. If the State's version of the facts is accepted, we have only Jackson's ready and coherent responses to brief questioning by the police unaffected by drugs or threats or coercive behavior on the part of the police; and his apparently strong condition at the time despite his two bullet wounds.

However, we think that the further proceedings to which Jackson is entitled should occur initially in the state courts rather than in the federal habeas corpus court. Jackson's trial did not comport with constitutional standards and he is entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures; the State is also entitled to make this determination before this Court considers the case on direct review or a petition for habeas corpus is filed in a Federal District Court. This was the disposition in *Rogers* v. *Richmond, supra,* where, in a case coming to this Court from a denial of a habeas corpus, the Court ascertained a trial error of constitutional dimension: [21]

> "A state defendant should have the opportunity to have all issues which may be determinative of his guilt tried by a state judge or a state jury under appropriate state procedures which conform to the requirements of the Fourteenth Amendment. . . . [T]he State, too, has a weighty interest in having valid federal constitutional criteria applied in the administration of its criminal law by its own courts and juries. To require a federal judge exercising habeas corpus jurisdiction to attempt to combine within himself the proper functions of judge and jury in a state trial—to ask him to approximate the sympathies of the defendant's peers or to make the rulings which the state trial judge might make . . . —is potentially to prejudice state defendants claiming federal rights and to pre-empt functions that belong to state machinery in the administration of state criminal law." 365 U. S., at 547–548.

It is New York, therefore, not the federal habeas corpus court, which should first provide Jackson with that which

---

[21] Compare *Townsend* v. *Sain,* 372 U. S. 293, with *Rogers* v. *Richmond,* 365 U. S. 534.

he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence. Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether the conviction rested upon the confession; but if it did, there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so. Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that Jackson's confession was involuntary, there must be a new trial on guilt or innocence without the confession's being admitted in evidence.[22]

[22] In *Rogers* v. *Richmond*, *supra*, the Court, upon finding that the state trial judge applied a wholly erroneous standard of voluntariness, ordered a new trial. But the alternative disposition urged and rejected in that case was an evidentiary hearing in the Federal District Court. It does not appear that the Court considered the possi-

Obviously, the State is free to give Jackson a new trial if it so chooses, but for us to impose this requirement before the outcome of the new hearing on voluntariness is known would not comport with the interests of sound judicial administration and the proper relationship between federal and state courts. We cannot assume that New York will not now afford Jackson a hearing that is consistent with the requirements of due process. Indeed, New York thought it was affording Jackson such a hearing, and not without support in the decisions of this Court,[23] when it submitted the issue of voluntariness to the same jury that adjudicated guilt. It is both practical and desirable that in cases to be tried hereafter a proper determination of voluntariness be made prior to the admission of the confession to the jury which is adjudicating guilt or innocence. But as to Jackson, who has already been convicted and now seeks collateral relief, we cannot say that the Constitution requires a new trial if in a soundly conducted collateral proceeding, the confession which was admitted at the trial is fairly deter-

bility of a more limited initial hearing in the state court with a new trial dependent upon the outcome of the hearing.

[23] Except for *Stein* v. *New York, supra,* the procedure invalidated herein was not questioned in confession cases decided by this Court. In *Spano* v. *New York,* 360 U. S. 315, the Court read *Stein* as holding that "when a confession is not found by this Court to be involuntary, this Court will not reverse on the ground that the jury might have found it involuntary and might have relied on it." Also see *Thomas* v. *Arizona,* 356 U. S. 390; *Lyons* v. *Oklahoma,* 322 U. S. 596; *Wilson* v. *United States,* 162 U. S. 613. But cf. *United States* v. *Carignan,* 342 U. S. 36, 38:

"We think it clear that this defendant was entitled to such an opportunity to testify [in the absence of the jury as to the facts surrounding the confession]. An involuntary confession is inadmissible. *Wilson* v. *United States,* 162 U. S. 613, 623. Such evidence would be pertinent to the inquiry on admissibility and might be material and determinative. The refusal to admit the testimony was reversible error."

mined to be voluntary. Accordingly, the judgment denying petitioner's writ of habeas corpus is reversed and the case is remanded to the District Court to allow the State a reasonable time to afford Jackson a hearing or a new trial, failing which Jackson is entitled to his release.

*Reversed and remanded.*

## APPENDIX TO OPINION OF THE COURT.

ARIZONA: *State v. Preis,* 89 Ariz. 336, 338–339, 362 P. 2d 660, 661–662, cert. denied, 368 U. S. 934 (conflicts in the evidence for the jury but "it must appear to the reasonable satisfaction of the trial court that the confession was not obtained by threats, coercion or promises of immunity"). *State v. Hudson,* 89 Ariz. 103, 358 P. 2d 332, states the Arizona practice more clearly. If the judge finds that the confession is voluntary, he may admit it into evidence; if it appears the confession was not voluntary, he must not let the confession go before the jury. See also *State v. Pulliam,* 87 Ariz. 216, 349 P. 2d 781.

GEORGIA: *Downs v. State,* 208 Ga. 619, 68 S. E. 2d 568 (admissible where no evidence of involuntariness offered at preliminary examination). *Garrett v. State,* 203 Ga. 756, 48 S. E. 2d 377 (before admission prima facie showing of voluntariness is required; showing is satisfied where testimony as to voluntariness is not contradicted). *Coker v. State,* 199 Ga. 20, 33 S. E. 2d 171 (confession should have been excluded by trial judge even though there was testimony that the defendant was not coerced).

IDAHO: *State v. Van Vlack,* 57 Idaho 316, 65 P. 2d 736 (primarily for the trial court to determine the admissibility of a confession). *State v. Dowell,* 47 Idaho 457, 276 P. 39; *State v. Andreason,* 44 Idaho 396, 257 P. 370 (the question of voluntariness primarily for the determination of the trial court). *State v. Nolan,* 31 Idaho 71,

169 P. 295 (judge must determine if freely and vountarily made before admission).

MICHIGAN: *People* v. *Crow,* 304 Mich. 529, 8 N. W. 2d 164 (question of voluntariness for the jury). *People* v. *Preston,* 299 Mich. 484, 300 N. W. 853 (confession first ruled voluntary in preliminary examination; at trial the question is for the jury). *People* v. *Cleveland,* 251 Mich. 542, 232 N. W. 384 (involuntariness issue should be carefully scrutinized and confession excluded if involuntary; if conflict in evidence, matter for jury).

MINNESOTA: *State* v. *Schabert,* 218 Minn. 1, 15 N. W. 2d 585 (if evidence creates issue of fact as to trustworthiness, that issue should be submitted to the jury on proper instructions, citing *Wilson* v. *United States,* 162 U. S. 613, and New York, Pennsylvania and Massachusetts cases). *State* v. *Nelson,* 199 Minn. 86, 271 N. W. 114 (if judge finds confession admissible, the jury should also be allowed to pass on the question of voluntariness).

MISSOURI: *State* v. *Statler,* 331 S. W. 2d 526 (if the evidence is conflicting and issue close in preliminary hearing, the issue should be tried again at trial so that both trial judge and jury may pass upon it with additional evidence adduced at trial). *State* v. *Phillips,* 324 S. W. 2d 693. *State* v. *Bradford,* 262 S. W. 2d 584 (trial court not obliged to submit question to jury because there is substantial evidence showing the confession is voluntary; where the issue is close, the trial court may decide the question after additional evidence adduced at trial is in).

OHIO: *Burdge* v. *State,* 53 Ohio St. 512, 42 N. E. 594 (matters preliminary to the admission of evidence for the court but where court is in doubt about the matter, it may leave the question to the jury, relying on Massachusetts case). *State* v. *Powell,* 105 Ohio App. 529, 148 N. E. 2d 230, appeal dismissed, 167 Ohio St. 319, 148 N. E. 2d 232, cert. denied, 359 U. S. 964 (where the trial judge dis-

believes the defendant's testimony as to voluntariness, he may leave the issue to the jury; preliminary hearing in presence of jury is discretionary).

OREGON: *State* v. *Bodi*, 223 Ore. 486, 354 P. 2d 831 (judge in his discretion may determine voluntariness or allow jury to decide whether the confession is voluntary and *trustworthy*). *State* v. *Nunn*, 212 Ore. 546, 321 P. 2d 356 (trial judge is not finally to determine whether a confession is voluntary but is to determine whether the State's proof warrants a finding of voluntariness; if so, the jury can consider voluntariness in determining the weight to be afforded the confession).

PENNSYLVANIA: *Commonwealth* v. *Senk*, 412 Pa. 184, 194 A. 2d 221 (confession determined to be conditionally admissible after preliminary hearing). *Commonwealth* v. *Ross*, 403 Pa. 358, 365, 169 A. 2d 780, 784, cert. denied, 368 U. S. 904 (both trial court in preliminary hearing and jury applied the proper standard in determining the confession to be voluntary; trial court added that the question was one of fact for the jury). *Commonwealth* v. *Spardute*, 278 Pa. 37, 122 A. 161 (where State's evidence shows confession is voluntary, matter is for the jury; only coercive practices inducing a false confession render it inadmissible).

SOUTH CAROLINA: *State* v. *Bullock*, 235 S. C. 356, 111 S. E. 2d 657, appeal dismissed, 365 U. S. 292 (after trial judge decides the confession is admissible, jury may pass on the question of voluntariness). *State* v. *Livingston*, 223 S. C. 1, 73 S. E. 2d 850, cert. denied, 345 U. S. 959. *State* v. *Scott*, 209 S. C. 61, 38 S. E. 2d 902 (question is for the judge in first instance, but if the judge is doubtful or evidence is conflicting, the jury is necessarily the final arbiter).

SOUTH DAKOTA: *State* v. *Hinz*, 78 S. D. 442, 103 N. W. 2d 656 (court may resolve the question one way or the

other, or, if very doubtful, leave it to the jury). *State* v. *Nicholas,* 62 S. D. 511, 253 N. W. 737 (procedure is discretionary with the trial judge, but the more frequent practice is for the trial judge to decide the question of voluntariness). *State* v. *Montgomery,* 26 S. D. 539, 128 N. W. 718 (question of voluntariness may be submitted to the jury where the evidence is conflicting).

TEXAS: *Marrufo* v. *State,* 172 Tex. Cr. R. 398, 357 S. W. 2d 761 (confession not inadmissible as a matter of law). *Odis* v. *State,* 171 Tex. Cr. R. 107, 345 S. W. 2d 529 (proper for trial judge to find confession admissible as a matter of law and recognize an issue in regard to voluntariness for jury's consideration). *Bingham* v. *State,* 97 Tex. Cr. R. 594, 262 S. W. 747 (reversible error for the court to fail to pass on the admissibility of a confession since defendant entitled to the court's judgment on the matter; only if trial judge disbelieves evidence going to involuntariness should the confession be admitted).

WISCONSIN: *State* v. *Bronston,* 7 Wis. 2d 627, 97 N. W. 2d 504 (issue of *trustworthiness* of a confession for the jury). *Pollack* v. *State,* 215 Wis. 200, 253 N. W. 560 (unless the confession is wholly *untrustworthy,* it is to be submitted to the jury).

WYOMING: The only expression of the Wyoming court is found in *Clay* v. *State,* 15 Wyo. 42, 86 P. 17, where, in dictum, it is said that the jury may pass on the question if the admissions appear to be voluntary or the evidence is conflicting.

The same difficulty of classification exists in the federal judicial circuits. The cases in which the New York practice is said to be followed are generally instances where the defendant declines to offer any evidence in a preliminary examination after the Government has shown the confession to be voluntary. See *Hayes* v. *United States,* 296 F. 2d 657 (C. A. 8th Cir.), cert. denied, 369 U. S. 867. *United States* v. *Echeles,* 222 F. 2d 144 (C. A. 7th Cir.),

cert. denied, 350 U. S. 828; *United States* v. *Leviton,* 193 F. 2d 848 (C. A. 2d Cir.); or where the trial judge finds the confession to be voluntary, *United States* v. *Anthony,* 145 F. Supp. 323 (D. C. M. D. Pa.).

Other opinions from the United States Courts of Appeals for the various circuits indicate that they follow the Massachusetts or orthodox procedure. See *United States* v. *Gottfried,* 165 F. 2d 360, 367 (C. A. 2d Cir.), cert. denied, 333 U. S. 860; *United States* v. *Lustig,* 163 F. 2d 85, 88–89 (C. A. 2d Cir.), cert. denied, 332 U. S. 775; *McHenry* v. *United States,* 308 F. 2d 700 (C. A. 10th Cir.); *Andrews* v. *United States,* 309 F. 2d 127 (C. A. 5th Cir.), cert. denied, 372 U. S. 946; *Leonard* v. *United States,* 278 F. 2d 418 (C. A. 9th Cir.); *Smith* v. *United States,* 268 F. 2d 416 (C. A. 9th Cir.); *Shores* v. *United States,* 174 F. 2d 838 (C. A. 8th Cir.); *Denny* v. *United States,* 151 F. 2d 828 (C. A. 4th Cir.), cert. denied, 327 U. S. 777; *Kemler* v. *United States,* 133 F. 2d 235 (C. A. 1st Cir.); *Murphy* v. *United States,* 285 F. 801 (C. A. 7th Cir.), cert. denied, 261 U. S. 617.

The Court of Appeals for the District of Columbia, however, does seem to sanction a variation of the New York practice, with the requirement that the judge hold a full preliminary hearing, at which the defendant may testify, outside the presence of the jury. It is not clear what the trial judge must find before admitting the confession and submitting the issue of voluntariness to the jury. *Sawyer* v. *United States,* 112 U. S. App. D. C. 381, 303 F. 2d 392; *Wright* v. *United States,* 102 U. S. App. D. C. 36, 250 F. 2d 4 (where the confession could be found voluntary, the issue is for the jury). Although there apparently are no recent cases, the Court of Appeals for the Sixth Circuit appears to follow the New York practice. *Anderson* v. *United States,* 124 F. 2d 58, rev'd 318 U. S. 350; *McBryde* v. *United States,* 7 F. 2d 466.

Mr. Justice Black, with whom Mr. Justice Clark joins as to Part I of this opinion, dissenting in part and concurring in part.

## I.

In *Stein* v. *New York*, 346 U. S. 156, 177–179, this Court sustained the constitutionality of New York's procedure under which the jury, rather than the trial judge, resolves disputed questions of fact as to the voluntariness of confessions offered against defendants charged with crime. I think this holding was correct and would adhere to it. While I dissented from affirmance of the convictions in *Stein,* my dissent went to other points; I most assuredly did not dissent because of any doubts about a State's constitutional power in a criminal case to let the jury, as it does in New York, decide the question of a confession's voluntariness. In fact, I would be far more troubled about constitutionality should either a State or the Federal Government declare that a jury in trying a defendant charged with crime is compelled to accept without question a trial court's factual finding that a confession was voluntarily given. Whatever might be a judge's view of the voluntariness of a confession, the jury in passing on a defendant's guilt or innocence is, in my judgment, entitled to hear and determine voluntariness of a confession along with other factual issues on which its verdict must rest.

The Court rests its challenge to the reliability of jury verdicts in this field on its belief that it is unfair to a defendant, and therefore unconstitutional,[1] to have the question of voluntariness of a confession submitted to a jury until the trial judge has first canvassed the matter completely and made a final decision that the confession

---

[1] I am by no means suggesting that I believe that it is within this Court's power to treat as unconstitutional every state law or procedure that the Court believes to be "unfair."

is voluntary. New York does not do this, although, as pointed out in *Stein, supra,* 346 U. S., at 174, the trial judge does have much power to consider this question both before and after a jury's final verdict is entered.[2] If a rule like that which the Court now holds to be constitutionally required would in actual practice reduce the number of confessions submitted to juries, this would obviously be an advantage for a defendant whose alleged confession was for this reason excluded. Even assuming this Court's power to fashion this rule, I am still unable to conclude that this possible advantage to some defendants is reason enough to create a new constitutional rule striking down the New York trial-by-jury practice.

Another reason given by the Court for invalidating the New York rule is that it is inherently unfair and therefore unconstitutional to permit the jury to pass on voluntariness, since the jury, even though finding a confession to have been coerced, may nevertheless be unwilling to follow the court's instruction to disregard it, because it may also believe the confession is true, the defendant is guilty, and a guilty person ought not be allowed to escape punishment. This is a possibility, of a nature that is inherent in any confession fact-finding by human fact-finders—a possibility present perhaps as much in judges as in jurors. There are, of course, no statistics available, and probably none could be gathered, accurately reporting whether and to what extent fact-finders (judges or juries) are affected as the Court says they may be.

Though able to cite as support for its holding no prior cases suggesting that the New York practice is so unfair to defendants that it must be held unconstitutional, the

---

[2] The trial judge may set aside a verdict if he believes it to be "against the weight of the evidence." The state appellate courts exercise the same power and may set verdicts aside if for any reason they believe that "justice requires" them to do so. See N. Y. Code Crim. Proc. §§ 465, 528.

Court does refer to commentators who have made the suggestion.[3]  None of these commentators appears to have gathered factual data to support his thesis, nor does it appear that their arguments are at all rooted in the actual trial of criminal cases.  Theoretical contemplation is a highly valuable means of moving toward improved techniques in many fields, but it cannot wholly displace the knowledge that comes from the hard facts of everyday experience.  With this in mind it is not amiss to recall that the New York method of submitting the question of voluntariness to the jury without first having a definitive ruling by the judge not only has more than a century of history behind it but appears from the cases to be the procedure used in 15 States, the District of Columbia, and Puerto Rico, has been approved by this Court as a federal practice, see *Smith* v. *United States,* 348 U. S. 147, 150–151; compare *Wilson* v. *United States,* 162 U. S. 613, 624, and has been approved in six of the 11 United States Court of Appeals Circuits.[4]  Fourteen other States appear to require full-scale determinations as to voluntariness both by the trial court and the jury.[5]  Another 20 States require the trial judge first to decide the question of voluntariness for purposes of "admissibility" but have him then submit that question for the jury to consider in determining "credibility" or "weight." [6]  Yet no matter what label a particular State gives its rule and no matter what the purpose for which the rule says the jury may consider the confession's voluntariness, it is clear that all the States, in the end, do let the jury pass on

---

[3] Morgan, Functions of Judge and Jury in the Determination of Preliminary Questions of Fact, 43 Harv. L. Rev. 165, 168–169 (1929); Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317, 325–326 (1954).

[4] For a survey of the rule in the various States and in the Federal Judicial Circuits, see Appendices A and B.

[5] See Appendix A.

[6] See Appendix A.

the question of voluntariness for itself, whether in deciding "admissibility" or "credibility."

The Court in note 8 of its opinion indicates that a State may still, under the new constitutional rule announced today, permit a trial jury to determine voluntariness if first the trial judge has "fully and independently resolved the issue against the accused." *Ante,* p. 378. In other words, the Constitution now requires the judge to make this finding, and the jury's power to pass on voluntariness is a mere matter of grace, not something constitutionally required. If, as the Court assumes, allowing the jury to pass on the voluntariness of a confession before the judge has done so will "seriously distort" the jury's judgment, I fail to understand why its judgment would not be similarly distorted by its being allowed to pass on voluntariness after the judge has decided that question. Yet, of course, the jury passing on guilt or innocence must, under any fair system of criminal procedure, be allowed to consider and decide whether an offered confession is voluntary in order to pass on its credibility. But it should be obvious that, under the Court's new rule, when a confession does come before a jury it will have the judge's explicit or implicit stamp of approval on it. This Court will find it hard to say that the jury will not be greatly influenced, if not actually coerced, when what the trial judge does is the same as saying *"I* am convinced that this confession is voluntary, but, *of course,* you may decide otherwise if you like." [7]

Another disadvantage to the defendant under the Court's new rule is the failure to say anything about the

---

[7] The Court's opinion indicates that the judge will not make any such statement to the jury. If the Court here is holding that it is constitutionally impermissible for the judge to tell the jury that he himself has decided that the confession is voluntary, that is one thing. As I read the decisions in this field, however, I am far from persuaded that there are not many States in which the judge does admit the confession along with his statement that it is voluntary.

burden of proving voluntariness. The New York rule does now and apparently always has put on the State the burden of convincing the jury beyond a reasonable doubt that a confession is voluntary. See *Stein* v. *New York, supra,* 346 U. S., at 173 and n. 17; *People* v. *Valletutti,* 297 N. Y. 226, 229, 78 N. E. 2d 485, 486. The Court has not said that its new constitutional rule, which requires the judge to decide voluntariness, also imposes on the State the burden of proving this fact beyond a reasonable doubt. Does the Court's new rule allow the judge to decide voluntariness merely on a preponderance of the evidence? If so, this is a distinct disadvantage to the defendant. In fashioning its new constitutional rule, the Court should not leave this important question in doubt.

Finally, and even more important, the Court's new constitutional doctrine is, it seems to me, a strange one when we consider that both the United States Constitution and the New York Constitution (Art. I, § 2) establish trial by jury of criminal charges as a bedrock safeguard·of the people's liberties.[8] The reasons given by the Court for this downgrading of trial by jury appear to me to challenge the soundness of the Founders' great faith in jury trials. Implicit in these constitutional requirements of jury trial is a belief that juries can be trusted to decide factual issues. Stating the obvious fact that "it is only a *reliable* determination on the voluntariness issue which satisfies the constitutional rights of the defendant . . . ," *ante,* p. 387 (emphasis supplied), the Court concludes, however, that a jury's finding on this question is tainted by inherent unreliability. In making this judgment about the unreliability of juries, the Court, I believe, overlooks the fact that the Constitution itself long ago made the decision that juries *are* to be trusted.

---

[8] New York Const., Art. I, § 2, also provides that a defendant may not waive trial by jury if the crime with which he is charged may be punishable by death.

Today's holding means that hundreds of prisoners in the State of New York have been convicted after the kind of trial which the Court now says is unconstitutional. The same can fairly be said about state prisoners convicted in at least 14 other States listed in Appendix A–II to this opinion and federal prisoners convicted in 6 federal judicial circuits listed in Appendix B–II. Certainly if having the voluntariness of their confessions passed on only by a jury is a violation of the Fourteenth Amendment, as the Court says it is, then not only Jackson but all other state and federal prisoners already convicted under this procedure are, under our holding in *Fay* v. *Noia,* 372 U. S. 391, entitled to release unless the States and Federal Government are still willing and able to prosecute and convict them. Cf. *Doughty* v. *Maxwell,* 376 U. S. 202; *Pickelsimer* v. *Wainwright,* 375 U. S. 2. The disruptive effect which today's decision will have on the administration of criminal justice throughout the country will undoubtedly be great. Before today's holding is even a day old the Court has relied on it to vacate convictions in 11 cases from Arizona, Pennsylvania, Texas, New York, and the District of Columbia.[9] Nevertheless, if I thought that submitting the issue of voluntariness to the jury really denied the kind of trial commanded by the Constitution, I would not hesitate to reverse on that ground even if it meant overturning convictions in all the States, instead of in just about one-third of them. But for the reasons already stated it is

---

[9] *McNerlin* v. *Denno, post,* p. 575 (trial in New York court); *Muschette* v. *United States, post,* p. 569 (C. A. D. C. Cir.); *Pea* v. *United States, post,* p. 571 (C. A. D. C. Cir.); *Owen* v. *Arizona, post,* p. 574; *Catanzaro* v. *New York, post,* p. 573; *Del Hoyo* v. *New York, post,* p. 570; *Lathan* v. *New York, post,* p. 566; *Oister* v. *Pennsylvania, post,* p. 568; *Senk* v. *Pennsylvania, post,* p. 562; *Harris* v. *Texas, post,* p. 572; *Lopez* v. *Texas, post,* p. 567. See also *Berman* v. *United States, post,* p. 530, at 532, n. (dissenting opinion).

impossible for me to believe that permitting the jury alone to pass on factual issues of voluntariness violates the United States Constitution, which attempts in two different places to guarantee trial by jury. My wide difference with the Court is in its apparent holding that it has constitutional power to change state trial procedures because of its belief that they are not fair. There is no constitutional provision which gives this Court any such lawmaking power. I assume, although the Court's opinion is not clear on this point, that the basis for its holding is the "due process of law" clause of the Fourteenth Amendment. The Court appears to follow a judicial philosophy which has relied on that clause to strike down laws and procedures in many fields because of a judicial belief that they are "unfair," are contrary to "the concept of ordered liberty," "shock the conscience," or come within various other vague but appealing catch phrases. See, *e. g., Betts* v. *Brady,* 316 U. S. 455; *Rochin* v. *California,* 342 U. S. 165; *Palko* v. *Connecticut,* 302 U. S. 319; see also cases collected in *Adamson* v. *California,* 332 U. S. 46, 83, n. 12 (dissenting opinion). I have repeatedly objected to the use of the Due Process Clause to give judges such a wide and unbounded power, whether in cases involving criminal procedure, see, *e. g., Betts* v. *Brady, supra,* 316 U. S., at 474 (dissenting opinion); cf. *Gideon* v. *Wainwright,* 372 U. S. 335, or economic legislation, see *Ferguson* v. *Skrupa,* 372 U. S. 726. I believe that "due process of law" as it applies to trials means, as this Court held in *Chambers* v. *Florida,* 309 U. S. 227, 235–238, a trial according to the "law of the land," including all constitutional guarantees, both explicit and necessarily implied from explicit language, and all valid laws enacted pursuant to constitutionally granted powers. See also *Adamson* v. *California, supra,* 332 U. S., at 68 (dissenting opinion). I think that the New York law here held invalid is

in full accord with all the guarantees of the Federal Constitution and that it should not be held invalid by this Court because of a belief that the Court can improve on the Constitution.

## II.

The Fifth Amendment provides that no person shall in any criminal case be compelled to be a witness against himself. We have held in *Malloy* v. *Hogan, ante,* p. 1, that the Fourteenth Amendment makes this provision applicable to the States. And we have held that this provision means that coerced confessions cannot be used as evidence to convict a defendant charged with crime. See, *e. g., Haynes* v. *Washington,* 373 U. S. 503; *Chambers* v. *Florida,* 309 U. S. 227; *Brown* v. *Mississippi,* 297 U. S. 278. It is our duty when a conviction for crime comes to us based in part on a confession to review the record to decide for ourselves whether that confession was freely and voluntarily given. In so doing we must reexamine the facts to be certain that there has been no constitutional violation, and our inquiry to determine the facts on which constitutional rights depend cannot be cut off by factfindings at the trial, whether by judge or by jury. *Blackburn* v. *Alabama,* 361 U. S. 199, 205, n. 5; *Payne* v. *Arkansas,* 356 U. S. 560, 561–562; cf. *United States ex rel. Toth* v. *Quarles,* 350 U. S. 11, 18–19. In the present case the undisputed evidence showed:

> Petitioner committed a robbery in a hotel in New York. He ran from the place to get away, was accosted by a policeman, and after some words each shot the other. The policeman died. Petitioner caught a cab and went directly to a hospital, arriving there about 2 a. m. In response to a question he admitted that he had shot the policeman. By 3:35 a. m. he had lost a considerable amount of blood from serious gunshot wounds in his liver and one lung and was awaiting an operation which began

about an hour later and lasted about two hours. At 3:55 he was given doses of demerol and scopolamine, which are sedative and relaxing in their effects. During all the time he was in the hospital policemen were there. He had no counsel present and no friends. Immediately after the demerol and scopolamine were given him the assistant district attorney and a stenographer arrived. At the time he was questioned by the assistant district attorney he was thirsty and asked for water which was denied him either because, as he testified, he could get no water until he confessed, or because, as the State's witnesses testified, it was the hospital's rule not to give water to preoperative patients. While in this situation and condition he gave in answer to questions the confession that was used against him.

This last confession (but not the first statement, given at 2 a. m.) was, I think, shown by the above evidence without more to have been given under circumstances that were "inherently coercive," see *Ashcraft* v. *Tennessee*, 322 U. S. 143, 154, and therefore was not constitutionally admissible under the Fifth and Fourteenth Amendments. For this reason I would reverse the judgment below and remand the case to the District Court with directions to grant the petitioner's application for habeas corpus and to release him from custody unless the State within a reasonable time sets aside his former conviction and grants him a new trial.

### III.

The Court, instead of reversing for an entire new trial, gives New York a reasonable time for a judge to hold a new hearing, including the taking of new testimony, to determine whether the confession was voluntary. Even were I to accept the Court's holding that the New York rule is unconstitutional, I should agree with my Brother

CLARK that what Jackson is entitled to is a complete new trial. The Court's action makes use of the technique recently invented in *United States* v. *Shotwell Mfg. Co.,* 355 U. S. 233, under which a defendant is subjected to "piecemeal prosecution." 355 U. S., at 250 (dissenting opinion). I think, as I said in *Shotwell,* that such a fragmentizing process violates the spirit of the constitutional protection against double jeopardy, even if it does not infringe it technically. In *Shotwell* the use of the piecemeal procedure was justified by what were called the "peculiar circumstances" of that case. 355 U. S., at 243. But, as this case demonstrates, the availability and usefulness of the *Shotwell* device in sustaining convictions and denying defendants a new trial where all the facts are heard together are too apparent for its use to be confined to exceptional cases. I think *Shotwell* was wrong and should be overruled, not extended as the Court is doing.

## APPENDIX A TO OPINION OF MR. JUSTICE BLACK.

### RULES FOLLOWED IN THE STATES TO DETERMINE VOLUNTARINESS OF CONFESSIONS.

The decisions cited below are leading cases or cases illustrating the rules followed in the respective States; the listings are not exhaustive. This classification does not take account of such variables as burden of proof, whether a preliminary hearing is held, whether the jury is present at such a hearing, etc. A few States have two or more lines of cases suggesting approval of two or more conflicting rules; in such situations the State is listed under the view which in light of most recent cases appears the dominant one, and decisions seemingly inconsistent are pointed out. Where a court clearly has changed from one rule to another, even though without specifically overruling its earlier decisions, those earlier deci-

sions are not cited. *E. g., Commonwealth* v. *Knapp,* 10 Pick. (27 Mass.) 477, 495–496 (1830), approved the "orthodox" rule, which, since *Commonwealth* v. *Preece,* 140 Mass. 276, 277, 5 N. E. 494, 495 (1885), is no longer followed in Massachusetts.[1]

As the Court, my Brother Harlan, and commentators in this field have aptly pointed out, the rules stated in the decisions are not always clear, so that in some cases there may be room for doubt as to precisely what procedure a State follows. I believe, however, that a full and fair reading of the cases listed below as following the New York rule will show that there is every reason to believe that many people have been convicted of crimes in those States with cases so classified after trials in which judges did not resolve factual issues and determine the question of voluntariness.

### I. *Wigmore*[2] *or "Orthodox" Rule.*

Judge hears all the evidence and then rules on voluntariness for purpose of admissibility of confession; jury considers voluntariness as affecting weight or credibility of confession.

Alabama: *Phillips* v. *State,* 248 Ala. 510, 520, 28 So. 2d 542, 550 (1946); *Blackburn* v. *State,* 38 Ala. App. 143, 149, 88 So. 2d 199, 204 (1954), cert. denied, 264 Ala. 694, 88 So. 2d 205 (1956), vacated and remanded on another point *sub nom. Blackburn* v. *Alabama,* 354

---

[1] The law in Nevada on this point apparently has not been settled. Although *State* v. *Williams,* 31 Nev. 360, 375–376, 102 P. 974, 980–981 (1909), appeared to establish the "orthodox" rule, the Supreme Court of Nevada in *State* v. *Fouquette,* 67 Nev. 505, 533–534, 221 P. 2d 404, 419 (1950), cert. denied, 341 U. S. 932 (1951), stated that the question was still open and that the *Williams* case had not decided it. The trial judge in the *Fouquette* case applied the Massachusetts rule.

[2] See 3 Wigmore, Evidence (3d ed. 1940), § 861.

U. S. 393 (1957), aff'd, 40 Ala. App. 116, 109 So. 2d 736 (1958), cert. denied, 268 Ala. 699, 109 So. 2d 738 (1959), rev'd'on another point *sub nom. Blackburn* v. *Alabama,* 361 U. S. 199 (1960).

COLORADO: *Read* v. *People,* 122 Colo. 308, 318–319, 221 P. 2d 1070, 1076 (1950); *Downey* v. *People,* 121 Colo. 307, 317, 215 P. 2d 892, 897 (1950); *Osborn* v. *People,* 83 Colo. 4, 29–30, 262 P. 892, 901 (1927); *Fincher* v. *People,* 26 Colo. 169, 173, 56 P. 902, 904 (1899). But see *Bruner* v. *People,* 113 Colo. 194, 217–218, 156 P. 2d 111, 122 (1945) (seems to state Massachusetts rule). And see *Roper* v. *People,* 116 Colo. 493, 497–499, 179 P. 2d 232, 234–235 (1947) (approves *Bruner* but also quotes from *Osborn* v. *People, supra,* a case clearly stating the "orthodox" rule).

CONNECTICUT: *State* v. *Buteau,* 136 Conn. 113, 124, 68 A. 2d 681, 686 (1949), cert. denied, 339 U. S. 903 (1950); *State* v. *McCarthy,* 133 Conn. 171, 177, 49 A. 2d 594, 597 (1946).

FLORIDA: *Leach* v. *State,* 132 So. 2d 329, 333 (1961), cert. denied, 368 U. S. 1005 (1962); *Graham* v. *State,* 91 So. 2d 662, 663–664 (1956); *Bates* v. *State,* 78 Fla. 672, 676, 84 So. 373, 374–375 (1919).

ILLINOIS: *People* v. *Miller,* 13 Ill. 2d 84, 97, 148 N. E. 2d 455, 462, cert. denied, 357 U. S. 943 (1958); *People* v. *Fox,* 319 Ill. 606, 616–619; 150 N. E. 347, 351–352 (1926).

INDIANA: *Caudill* v. *State,* 224 Ind. 531, 538, 69 N. E. 2d 549, 552 (1946).

KANSAS: *State* v. *Seward,* 163 Kan. 136, 144–146, 181 P. 2d 478, 484–485 (1947); *State* v. *Curtis,* 93 Kan. 743, 750–751, 145 P. 858, 861 (1915).

KENTUCKY: Ky. Rev. Stat. § 422.110; *Cooper* v. *Commonwealth,* 374 S. W. 2d 481, 482–483 (1964); *Bass* v. *Commonwealth,* 296 Ky. 426, 431, 177 S. W. 2d 386, 388,

cert. denied, 323 U. S. 745 (1944); *Herd* v. *Common-wealth,* 294 Ky. 154, 156–157, 171 S. W. 2d 32, 33 (1943).

LOUISIANA: *State* v. *Freeman,* 245 La. 665, 670–671, 160 So. 2d 571, 573 (1964); *State* v. *Kennedy,* 232 La. 755, 762–763, 95 So. 2d 301, 303 (1957); *State* v. *Wilson,* 217 La. 470, 486, 46 So. 2d 738, 743–744 (1950), aff'd, 341 U. S. 901 (1951).

MISSISSIPPI: *Jones* v. *State,* 228 Miss. 458, 474–475, 88 So. 2d 91, 98 (1956); *Brooks* v. *State,* 178 Miss. 575, 581–582, 173 So. 409, 411 (1937); *Ellis* v. *State,* 65 Miss. 44, 47–48, 3 So. 188, 189–190 (1887).

MONTANA: *State* v. *Rossell,* 113 Mont. 457, 466, 127 P. 2d 379, 383 (1942); *State* v. *Dixson,* 80 Mont. 181, 196, 260 P. 138, 144 (1927); *State* v. *Sherman,* 35 Mont. 512, 518–519, 90 P. 981, 982 (1907).

NEW MEXICO: *State* v. *Armijo,* 64 N. M. 431, 434–435, 329 P. 2d 785, 787–788 (1958); *State* v. *Ascarate,* 21 N. M. 191, 201–202, 153 P. 1036, 1039 (1915), appeal dismissed, 245 U. S. 625 (1917). But cf. *State* v. *Armijo,* 18 N. M. 262, 268, 135 P. 555, 556–557 (1913) (dictum that trial judge may in his discretion follow Massachusetts rule).

NORTH CAROLINA: *State* v. *Outing,* 255 N. C. 468, 472, 121 S. E. 2d 847, 849 (1961); *State* v. *Davis,* 253 N. C. 86, 94–95, 116 S. E. 2d 365, 370 (1960), cert. denied, 365 U. S. 855 (1961).

NORTH DAKOTA: *State* v. *English,* 85 N. W. 2d 427, 430 (1957); *State* v. *Nagel,* 75 N. D. 495, 515–516, 28 N. W. 2d 665, 677 (1947); *State* v. *Kerns,* 50 N. D. 927, 935–936, 198 N. W. 698, 700 (1924).

TENNESSEE: *Tines* v. *State,* 203 Tenn. 612, 619, 315 S. W. 2d 111, 114 (1958), cert. denied, 358 U. S. 889 (1958); *Wynn* v. *State,* 181 Tenn. 325, 328–329, 181 S. W. 2d 332, 333 (1944); cf. *Boyd* v. *State,* 2 Humph. (21 Tenn.) 39, 40–41 (1840).

UTAH: *State* v. *Braasch,* 119 Utah 450, 455, 229 P. 2d 289, 291 (1951), cert. denied, 342 U. S. 910 (1952); *State* v. *Mares,* 113 Utah 225, 243–244, 192 P. 2d 861, 870 (1948); *State* v. *Crank,* 105 Utah 332, 346–355, 142 P. 2d 178, 184–188 (1943).

VERMONT: *State* v. *Blair,* 118 Vt. 81, 85, 99 A. 2d 677, 680 (1953); *State* v. *Watson,* 114 Vt. 543, 548, 49 A. 2d 174, 177 (1946); *State* v. *Long,* 95 Vt. 485, 490, 115 A. 734, 737 (1922).

VIRGINIA: *Durrette* v. *Commonwealth,* 201 Va. 735, 744, 113 S. E. 2d 842, 849 (1960); *Campbell* v. *Commonwealth,* 194 Va. 825, 830, 75 S. E. 2d 468, 471 (1953); *Jackson* v. *Commonwealth,* 193 Va. 664, 673, 70 S. E. 2d 322, 327 (1952).

WASHINGTON: *State* v. *Moore,* 60 Wash. 2d 144, 146–147, 372 P. 2d 536, 538 (1962); *State* v. *Holman,* 58 Wash. 2d 754, 756–757, 364 P. 2d 921, 922–923 (1961).

WEST VIRGINIA: *State* v. *Vance,* 146 W. Va. 925, 934, 124 S. E. 2d 252, 257 (1962); *State* v. *Brady,* 104 W. Va. 523, 529–530, 140 S. E. 546, 549 (1927).

## II. *"New York" Rule.*

If there is a factual conflict in the evidence as to voluntariness over which reasonable men could differ, the judge leaves the question of voluntariness to the jury.

ARKANSAS: *Monts* v. *State,* 233 Ark. 816, 823, 349 S. W. 2d 350, 355 (1961); *Burton* v. *State,* 204 Ark. 548, 550–551, 163 S. W. 2d 160, 162 (1942); *McClellan* v. *State,* 203 Ark. 386, 393–394, 156 S. W. 2d 800, 803 (1941).

DISTRICT OF COLUMBIA: *Wright* v. *United States,* 102 U. S. App. D. C. 36, 45, 250 F. 2d 4, 13 (1957); *Catoe* v. *United States,* 76 U. S. App. D. C. 292, 295, 131 F. 2d 16, 19 (1942); *McAffee* v. *United States,* 70 App. D. C.

142, 145, 105 F. 2d 21, 24 (1939), 72 App. D. C. 60, 65, 111 F. 2d 199, 204, cert. denied, 310 U. S. 643 (1940); cf. *Sawyer* v. *United States,* 112 U. S. App. D. C. 381, 303 F. 2d 392, 393 (1962).

GEORGIA: *Downs* v. *State,* 208 Ga. 619, 621, 68 S. E. 2d 568, 569–570 (1952); *Garrett* v. *State,* 203 Ga. 756, 762–763, 48 S. E. 2d 377, 382 (1948); *Coker* v. *State,* 199 Ga. 20, 23–25, 33 S. E. 2d 171, 173–174 (1945); *Bryant* v. *State,* 191 Ga. 686, 710–711, 13 S. E. 2d 820, 836–837 (1941).

IOWA: *State* v. *Jones,* 253 Iowa 829, 834–835, 113 N. W. 2d 303, 307 (1962); *State* v. *Hofer,* 238 Iowa 820, 828, 829, 28 N. W. 2d 475, 480 (1947); *State* v. *Johnson,* 210 Iowa 167, 171, 230 N. W. 513, 515 (1930).

MICHIGAN: *People* v. *Crow,* 304 Mich. 529, 531, 8 N. W. 2d 164, 165 (1943); *People* v. *Preston,* 299 Mich. 484, 493–494, 300 N. W. 853, 857 (1941).

MINNESOTA: *State* v. *Schabert,* 218 Minn. 1, 7–9, 15 N. W. 2d 585, 588 (1944) (states New York rule although also cites both New York rule and Massachusetts rule cases).

MISSOURI: *State* v. *Goacher,* 376 S. W. 2d 97, 103 (1964); *State* v. *Bridges,* 349 S. W. 2d 214, 219 (1961); *State* v. *Laster,* 365 Mo. 1076, 1081–1082, 293 S. W. 2d 300, 303–304, cert. denied, 352 U. S. 936 (1956). Cf. *State* v. *Statler,* 331 S. W. 2d 526, 530 (1960) (question of voluntariness of confession should be submitted to jury "if there is substantial conflicting evidence on the issue and if the issue is close"); accord, *State* v. *Phillips,* 324 S. W. 2d 693, 696–697 (1959); *State* v. *Gibilterra,* 342 Mo. 577, 584–585, 116 S. W. 2d 88, 93–94 (1938).

NEW YORK: *People* v. *Pignataro,* 263 N. Y. 229, 240–241, 188 N. E. 720, 724 (1934); *People* v. *Weiner,* 248 N. Y. 118, 122, 161 N. E. 441, 443 (1928); *People* v. *Doran,* 246 N. Y. 409, 416–418, 159 N. E. 379, 381–382 (1927).

OHIO: If the evidence as to voluntariness is conflicting, the trial judge may in his discretion follow the New York rule; otherwise he may follow the "orthodox" rule. *Burdge* v. *State,* 53 Ohio St. 512, 516–518, 42 N. E. 594, 595–596 (1895); *State* v. *Powell,* 105 Ohio App. 529, 530–531, 148 N. E. 2d 230, 231 (1957), appeal dismissed, 167 Ohio St. 319, 148 N. E. 2d 232 (1958), cert. denied, 359 U. S. 964 (1959); *State* v. *Hensley,* 31 Ohio L. Abs. 348, 349–350 (1939).

OREGON: *State* v. *Bodi,* 223 Ore. 486, 491, 354 P. 2d 831, 833–834 (1960); *State* v. *Nunn,* 212 Ore. 546, 554, 321 P. 2d 356, 360 (1958).

PENNSYLVANIA: *Commonwealth* v. *Senk,* 412 Pa. 184, 194, 194 A. 2d 221, 226 (1963), vacated and remanded on authority of the present case *sub nom. Senk* v. *Pennsylvania, post,* p. 562; *Commonwealth* v. *Oister,* 201 Pa. Super. 251, 257–258, 191 A. 2d 851, 854 (1963), vacated and remanded on authority of the present case *sub nom. Oister* v. *Pennsylvania, post,* p. 568; *Commonwealth* v. *Ross,* 403 Pa. 358, 365, 169 A. 2d 780, 784, cert. denied, 368 U. S. 904 (1961); *Commonwealth* v. *Spardute,* 278 Pa. 37, 48, 122 A. 161, 165 (1923).

PUERTO RICO: *People* v. *Fournier,* 77 P. R. 208, 243–244 (1954); *People* v. *Declet,* 65 P. R. 22, 25 (1945).

SOUTH CAROLINA: *State* v. *Bullock,* 235 S. C. 356, 366–367, 111 S. E. 2d 657, 662 (1959), appeal dismissed, 365 U. S. 292 (1961); *State* v. *Livingston,* 223 S. C. 1, 6, 73 S. E. 2d 850, 852 (1952), cert. denied, 345 U. S. 959 (1953); *State* v. *Scott,* 209 S. C. 61, 64, 38 S. E. 2d 902, 903 (1946).

SOUTH DAKOTA: *State* v. *Nicholas,* 62 S. D. 511, 515, 253 N. W. 737, 738–739 (1934); *State* v. *Montgomery,* 26 S. D. 539, 542, 128 N. W. 718, 719 (1910) (question of voluntariness of confession should be submitted to jury "if the evidence submitted to the court should

be conflicting, leaving in the mind of the court any question as to the competency of such confession"); cf. *State* v. *Hinz,* 78 S. D. 442, 449–450, 103 N. W. 2d 656, 660 (1960).

TEXAS: *Harris* v. *State,* 370 S. W. 2d 886, 887 (1963), vacated and remanded on authority of the present case *sub nom. Harris* v. *Texas, post,* p. 572; *Lopez* v. *State,* 366 S. W. 2d 587 (1963), vacated and remanded on authority of the present case *sub nom. Lopez* v. *Texas, post,* p. 567; *Marrufo* v. *State,* 172 Tex. Cr. R. 398, 402, 357 S. W. 2d 761, 764 (1962); *Odis* v. *State,* 171 Tex Cr. R. 107, 109, 345 S. W. 2d 529, 530–531 (1961); *Newman* v. *State,* 148 Tex. Cr. R. 645, 649–650, 187 S. W. 2d 559, 561–562 (1945), cert. denied, 326 U. S. 772 (1945); *Gipson* v. *State,* 147 Tex. Cr. R. 428, 429, 181 S. W. 2d 76, 77 (1944); *Ward* v. *State,* 144 Tex. Cr. R. 444, 449, 158 S. W. 2d 516, 518 (1941), rev'd on another point *sub nom. Ward* v. *Texas,* 316 U. S. 547 (1942). But cf. *Bingham* v. *State,* 97 Tex. Cr. R. 594, 596–601, 262 S. W. 747, 749–750 (1924) (perhaps states Massachusetts rule).

WISCONSIN: *State* v. *Bronston,* 7 Wis. 2d 627, 638, 97 N. W. 2d 504, 511 (1959); *Pollack* v. *State,* 215 Wis. 200, 217, 253 N. W. 560, 567 (1934).

WYOMING: *Clay* v. *State,* 15 Wyo. 42, 59, 86 P. 17, 19 (1906).

III. *"Massachusetts" or "Humane" Rule.*

Judge hears all the evidence and rules on voluntariness before allowing confession into evidence; if he finds the confession voluntary, jury is then instructed that it must also find that the confession was voluntary before it may consider it.

ALASKA: *Smith* v. *United States,* 268 F. 2d 416, 420–421 (C. A. 9th Cir. 1959).

ARIZONA: *State* v. *Hudson*, 89 Ariz. 103, 106, 358 P. 2d 332, 333–334 (1960); *State* v. *Pulliam*, 87 Ariz. 216, 220–223, 349 P. 2d 781, 784 (1960); *State* v. *Hood*, 69 Ariz. 294, 299–300, 213 P. 2d 368, 371–372 (1950); *State* v. *Johnson*, 69 Ariz. 203, 206, 211 P. 2d 469, 471 (1949). But see *State* v. *Federico*, 94 Ariz. 413, 385 P. 2d 706 (1963), vacated and remanded on authority of the present case *sub nom. Owen* v. *Arizona, post*, p. 574; *State* v. *Owen*, 94 Ariz. 404, 409, 385 P. 2d 700, 703 (1963), vacated and remanded on authority of the present case *sub nom. Owen* v. *Arizona, post*, p. 574; *State* v. *Preis*, 89 Ariz. 336, 338, 362 P. 2d 660, 661, cert. denied, 368 U. S. 934 (1961) (seem to state or follow New York rule).

CALIFORNIA: *People* v. *Bevins*, 54 Cal. 2d 71, 76–77, 351 P. 2d 776, 779–780 (1960); *People* v. *Crooker*, 47 Cal. 2d 348, 353–355, 303 P. 2d 753, 757–758 (1956), aff'd *sub nom. Crooker* v. *California*, 357 U. S. 433 (1958); *People* v. *Gonzales*, 24 Cal. 2d 870, 876–877, 151 P. 2d 251, 254–255 (1944); *People* v. *Appleton*, 152 Cal. App. 2d 240, 244, 313 P. 2d 154, 156 (Dist. Ct. App. 1957) (trial judge may follow Massachusetts rule after he has found confession to be voluntary). Cf. *People* v. *Childers*, 154 Cal. App. 2d 17, 20, 315 P. 2d 480, 482 (Dist. Ct. App. 1957) (states Massachusetts rule without qualification).

DELAWARE: *Wilson* v. *State*, 49 Del. 37, 48, 109 A. 2d 381, 387 (1954), cert. denied, 348 U. S. 983 (1955).

HAWAII: *Territory* v. *Young*, 37 Haw. 189, 193 (1945) (*semble*); *Territory* v. *Alcosiba*, 36 Haw. 231, 235 (1942) (*semble*).

IDAHO: *State* v. *Van Vlack*, 57 Idaho 316, 342–343, 65 P. 2d 736, 748 (1937). But cf. *State* v. *Dowell*, 47 Idaho 457, 464, 276 P. 39, 41 (1929); *State* v. *Andreason*, 44

Idaho 396, 401–402, 257 P. 370, 371 (1927) (seem to state "orthodox" rule).

MAINE: *State* v. *Robbins,* 135 Me. 121, 121–122, 190 A. 630, 631 (1937); *State* v. *Grover,* 96 Me. 363, 365–367, 52 A. 757, 758–759 (1902).

MARYLAND: *Parker* v. *State,* 225 Md. 288, 291, 170 A. 2d 210, 211 (1961); *Presley* v. *State,* 224 Md. 550, 559, 168 A. 2d 510, 515 (1961), cert. denied, 368 U. S. 957 (1962); *Hall* v. *State,* 223 Md. 158, 169–170, 162 A. 2d 751, 757 (1960); *Linkins* v. *State,* 202 Md. 212, 221–224, 96 A. 2d 246, 250–252 (1953); *Smith* v. *State,* 189 Md. 596, 603–606, 56 A. 2d 818, 821–822 (1948). But cf. *Grammer* v. *State,* 203 Md. 200, 218–219, 100 A. 2d 257, 265 (1953), cert. denied, 347 U. S. 938 (1954); *Jones* v. *State,* 188 Md. 263, 270–271, 52 A. 2d 484, 487–488 (1947); *Peters* v. *State,* 187 Md. 7, 15–16, 48 A. 2d 586, 590 (1946); *Nicholson* v. *State,* 38 Md. 140, 155–157 (1873) (not disapproved in later cases, appear to state "orthodox" rule).

MASSACHUSETTS: *Commonwealth* v. *Sheppard,* 313 Mass. 590, 603–604, 48 N. E. 2d 630, 639 (1943); *Commonwealth* v. *Preece,* 140 Mass. 276, 277, 5 N. E. 494, 495 (1885).

NEBRASKA: *Cramer* v. *State,* 145 Neb. 88, 97–98, 15 N. W. 2d 323, 328–329 (1944); *Schlegel* v. *State,* 143 Neb. 497, 500, 10 N. W. 2d 264, 266 (1943); cf. *Gallegos* v. *State,* 152 Neb. 831, 837–840, 43 N. W. 2d 1, 5–6 (1950) (*semble*), aff'd on another point *sub nom. Gallegos* v. *Nebraska,* 342 U. S. 55 (1951).

NEW HAMPSHIRE: *State* v. *Squires,* 48 N. H. 364, 369–370 (1869) (seems to hold that trial judge may in his discretion follow the Massachusetts rule; otherwise he may follow the "orthodox" rule).

NEW JERSEY: *State* v. *Tassiello,* 39 N. J. 282, 291–292, 188 A. 2d 406, 411–412 (1963); *State* v. *Smith,* 32 N. J.

501, 557–560, 161 A. 2d 520, 550–552 (1960), cert. denied, 364 U. S. 936 (1961).

OKLAHOMA: *Williams* v. *State,* 93 Okla. Cr. 260, 265, 226 P. 2d 989, 993 (1951); *Lyons* v. *State,* 77 Okla. Cr. 197, 233–237, 138 P. 2d 142, 162–163 (1943), aff'd on another point *sub nom. Lyons* v. *Oklahoma,* 322 U. S. 596 (1944); *Wood* v. *State,* 72 Okla. Cr. 364, 374–375, 116 P. 2d 728, 733 (1941). But cf. *Cornell* v. *State,* 91 Okla. Cr. 175, 183–184, 217 P. 2d 528, 532–533 (1950); *Pressley* v. *State,* 71 Okla. Cr. 436, 444–446, 112 P. 2d 809, 813–814 (1941); *Rowan* v. *State,* 57 Okla. Cr. 345, 362, 49 P. 2d 791, 798 (1935) (cases which appear to state the "orthodox" rule and are nevertheless cited with approval in the first-named group of decisions).

RHODE ISLAND: *State* v. *Boswell,* 73 R. I. 358, 361, 56 A. 2d 196, 198 (1947); *State* v. *Mariano,* 37 R. I. 168, 186–187, 91 A. 21, 29 (1914).

## APPENDIX B TO OPINION OF MR. JUSTICE BLACK.

RULES FOLLOWED IN THE FEDERAL JUDICIAL CIRCUITS TO DETERMINE VOLUNTARINESS OF CONFESSIONS.

In *Wilson* v. *United States,* 162 U. S. 613, 624 (1896) this Court said that in federal criminal trials "When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury with the direction that they should reject the confession if upon the whole evidence they are satisfied it was not the voluntary act of the defendant." This language appears to sanction either the "orthodox" rule or the Massachusetts rule. The federal courts in the various circuits, however, often citing *Wilson,* have given it varying interpretations.

Cases are cited below subject to the same qualifications set forth in Appendix A, *supra.*

## I. *Wigmore or "Orthodox" Rule.*

FIRST CIRCUIT: *Kemler* v. *United States,* 133 F. 2d 235, 239–240 (1943).

FIFTH CIRCUIT: *Andrews* v. *United States,* 309 F. 2d 127, 129 (1962), cert. denied, 372 U. S. 946 (1963); *Schaffer* v. *United States,* 221 F. 2d 17, 21 (1955); *Wagner* v. *United States,* 110 F. 2d 595, 596 (1940), cert. denied, 310 U. S. 643 (1940). But cf. *Duncan* v. *United States,* 197 F. 2d 935, 937–938, cert. denied, 344 U. S. 885 (1952); *Patterson* v. *United States,* 183 F. 2d 687, 689–690 (1950) (appear to state Massachusetts rule).

TENTH CIRCUIT: *McHenry* v. *United States,* 308 F. 2d 700, 704 (1962), cert. denied, 374 U. S. 833 (1963). But cf. *United States* v. *Ruhl,* 55 F. Supp. 641, 644–645 (D. C. D. Wyo. 1944), aff'd, 148 F. 2d 173, 175 (1945) (appears to follow Massachusetts rule).

## II. *"New York" Rule.*

SECOND CIRCUIT: *United States* v. *Leviton,* 193 F. 2d 848, 852 (1951), cert. denied, 343 U. S. 946 (1952); but cf. *United States* v. *Gottfried,* 165 F. 2d 360, 367 (1948), cert. denied, 333 U. S. 860 (1948) ("orthodox" rule); *United States* v. *Lustig,* 163 F. 2d 85, 88–89, cert. denied, 332 U. S. 775 (1947) ("orthodox" rule); *United States* v. *Aviles,* 274 F. 2d 179, 192, cert. denied, 362 U. S. 974, 982 (1960) (appears to hold no error to follow Massachusetts rule).

THIRD CIRCUIT: *United States* v. *Anthony,* 145 F. Supp. 323, 335–336 (D. C. M. D. Pa. 1956) (quotes discretionary rule of *Wilson* v. *United States, supra,* but

seems to apply New York rule and cites Pennsylvania cases following it).

SIXTH CIRCUIT: *Anderson* v. *United States,* 124 F. 2d 58, 67 (1941), rev'd on another point, 318 U. S. 350 (1943); *McBryde* v. *United States,* 7 F. 2d 466, 467 (1925).

SEVENTH CIRCUIT: *United States* v. *Echeles,* 222 F. 2d 144, 154, cert. denied, 350 U. S. 828 (1955); *Cohen* v. *United States,* 291 F. 368, 369 (1923); but cf. *Murphy* v. *United States,* 285 F. 801, 807–808 (1923), cert. denied, 261 U. S. 617 (1923) (appears to state "orthodox" rule).

EIGHTH CIRCUIT: *Hayes* v. *United States,* 296 F. 2d 657, 670 (1961), cert. denied, 369 U. S. 867 (1962); *Shores* v. *United States,* 174 F. 2d 838, 842 (1949).

DISTRICT OF COLUMBIA CIRCUIT: *Pea* v. *United States,* 116 U. S. App. D. C. 410, 324 F. 2d 442 (1963), vacated and remanded on authority of the present case, *post,* p. 571; *Muschette* v. *United States,* 116 U. S. App. D. C. 239, 240, 322 F. 2d 989, 990 (1963), vacated and remanded on authority of the present case, *post,* p. 569; *Wright* v. *United States,* 102 U. S. App. D. C. 36, 45, 250 F. 2d 4, 13 (1957); *Catoe* v. *United States,* 76 U. S. App. D. C. 292, 295, 131 F. 2d 16, 19 (1942); *McAffee* v. *United States,* 70 App. D. C. 142, 145, 105 F. 2d 21, 24 (1939), 72 App. D. C. 60, 65, 111 F. 2d 199, 204, cert. denied, 310 U. S. 643 (1940); cf. *Sawyer* v. *United States,* 112 U. S. App. D. C. 381, 303 F. 2d 392, 393 (1962).

III. *"Massachusetts" Rule.*

FOURTH CIRCUIT: *Denny* v. *United States,* 151 F. 2d 828, 833 (1945), cert. denied, 327 U. S. 777 (1946) (appears to follow *Wilson* v. *United States,* 162 U. S. 613, 624 (1896), and apply Massachusetts rule).

NINTH CIRCUIT: *Leonard* v. *United States,* 278 F. 2d
418, 420–421 (1960) *(semble)*; *Smith* v. *United States,*
268 F. 2d 416, 420–421 (1959). But cf. *Pon Wing
Quong* v. *United States,* 111 F. 2d 751, 757 (1940)
("orthodox" rule).

MR. JUSTICE CLARK, dissenting.

The Court examines the validity, under the Fourteenth
Amendment, of New York's procedure to determine the
voluntariness of a confession. However, as I read the
record, New York's procedure was not invoked in the trial
court or attacked on appeal and is not properly before us.
The New York procedure providing for a preliminary
hearing could be set in motion, and its validity ques-
tioned, only if objection was made to the admissibility
of the confession. It is clear that counsel for petitioner
in the trial court—a lawyer of 50 years' trial experience
in the criminal courts, including service on the bench—
did not object to the introduction of the statements made
by the petitioner or ask for a preliminary hearing. His
contention was that the circumstances of the sedation
went to the "weight" of the statements, not to their
admissibility. This is shown by his cross-examination of
the State's doctor and by the dialogue at the bench there-
after.[1] And, even after this dialogue, petitioner's counsel

---

[1] "The Court: Judge Healy raised the point in cross-examination
that sedation of a kind was administered to the patient.

"Mr. Healy: Some kind.

"The Court: And therefore he is going to contend and he does now
that the confession hasn't the weight the law requires. Is that your
purpose?

"Mr. Healy: That's correct. There are two, one statement and
another statement. One statement to the police and one statement
to the District Attorney.

never made any motion to strike the statements or any objection to their use by the jury, but challenged only the weight to be given them. This is further shown by his failure to raise the constitutionality of New York's practice at any time before verdict or thereafter on his motion for a new trial. Nor was it raised or passed upon by New York's Court of Appeals. That court's amended remittitur shows that the constitutional questions passed upon were whether the "confession was coerced" and whether the judge erred in failing to instruct the jury that, "in determining the voluntary nature of the confession, they were to consider his physical condition at the time thereof." 10 N. Y. 2d 816, 178 N. E. 2d 234.

Still, the Court strikes down the New York rule of procedure which we approved in *Stein* v. *New York,* 346 U. S. 156 (1953). The trial judge had no opportunity to pass upon the statements because no objection was raised and no hearing was requested. I agree with the Court that "[a] defendant objecting to the admission of a confession is entitled to a fair hearing . . . ." However, I cannot see why the Court reaches out and strikes down a rule which was not invoked and which is therefore not

---

"The Court: Well, the one to the police was what hour, I would like to know, and the one to the District Attorney was what hour?

"Mr. Healy: The one to the police.

"Mr. Schor: To the police, to Detective Kaile, at two o'clock.

"The Court: Get the statement.

"Mr. Healy: The statement that I raised the point about. This is the statement taken by the District Attorney, by Mr. Postal.

"The Court: Yes.

"Mr. Healy: Mr. Lentini being the hearing reporter. That was taken at 3:55.

"The Court: That's the time that you say he was in no mental condition to make the statement?

"Mr. Healy: That's correct.

"The Court: Is that correct?

"Mr. Healy: That's correct."

applicable to this case. In reaching out for this question the Court apparently relies on *Fay* v. *Noia*, 372 U. S. 391 (1963). While that case seems to have turned into a legal "Mother Hubbard" I fail to see how it could govern this situation.

The Court seems to imply that New York's procedure "injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness." I think not. The judge clearly covered this in his charge:

> "If you determine that it was a confession, the statement offered here, and if you determine that Jackson made it, and if you determine that it is true; if you determine that it is accurate, before you may use it, the law still says you must find that it is voluntary, and the prosecution has the burden of proving that it was a voluntary confession."

This language is just the opposite of that used in *Rogers* v. *Richmond*, 365 U. S. 534 (1961), the case upon which the Court places principal reliance.[2] There the jurors were told to use the confession if they found it "in

---

[2] "No confession or admission of an accused is admissible in evidence unless made freely and voluntarily and not under the influence of promises or threats. The fact that a confession was procured by the employment of some artifice or deception does not exclude the confession if it was not calculated, that is to say, if the artifice or deception was not calculated to procure an untrue statement. The motive of a person in confessing is of no importance provided the particular confession does not result from threats, fear or promises made by persons in actual or seeming authority. The object of evidence is to get at the truth, and a trick or device which has no tendency to produce a confession except one in accordance with the truth does not render the confession inadmissible . . . . The rules which surround the use of a confession are designed and put into operation because of the desire expressed in the law that the confession, if used, be probably a true confession." At 542.

accord with the truth . . . ." And Connecticut's highest court held that the question was whether the conduct "induced the defendant to confess falsely that he had committed the crime being investigated." 143 Conn. 167, at 173, 120 A. 2d 409, at 412. Here the judge warned the jury that *even* if they found the statements true, they must *also* find them voluntary before they may use them. And the proof of voluntariness was placed on the State. As my Brother BLACK says, the Court, in striking down New York's procedure, thus "challenge[s] the soundness of the Founders' great faith in jury trials." I too regret this "downgrading of trial by jury" and join in Section I of Brother BLACK's opinion. To me it appears crystal-clear that the charge amply protected Jackson from the possibility that the jury might have confused the question of voluntariness with the question of truth. Dependence on jury trials is the keystone of our system of criminal justice and I regret that the Court lends its weight to the destruction of this great safeguard to our liberties.

But even if the trial judge had instructed the jury to consider truth or falsity, the order here should be for a new trial, as in *Rogers* v. *Richmond, supra.* There the Court of Appeals was directed to hold the case a reasonable time "in order to give the State opportunity to *retry* petitioner . . . ." At 549. (Emphasis supplied.) But the Court does not do this. It strikes down New York's procedure and then tells New York—not to retry the petitioner—merely to have the trial judge hold a hearing on the admissibility of the confession and enter a definitive determination on that issue, as under the Massachusetts rule. This does not cure the error which the Court finds present. If the trial court did so err, this Court is making a more grievous error in amending New York's rule here and then requiring New York to apply it *ex post facto* without benefit of a full trial. Surely under the

reasoning of the Court, the petitioner would be entitled to a new trial.

Believing that the constitutionality of New York's rule is not ripe for decision here, I dissent. If I am in error on this, then I join my Brother HARLAN. His dissent is unanswerable.

MR. JUSTICE HARLAN, whom MR. JUSTICE CLARK and MR. JUSTICE STEWART join, dissenting.

Even under the broadest view of the restrictive effect of the Fourteenth Amendment, I would not have thought it open to doubt that the States were free to allocate the trial of issues, whether in criminal or civil cases, between judge and jury as they deemed best. The Court now holds, however, that New York's long-standing practice of leaving to the jury the resolution of reasonably disputed factual issues surrounding a criminal defendant's allegation that his confession was coerced violates due process. It is held that the Constitution permits submission of the question of coercion to the trial jury only if preceded by a determination of "voluntariness" by the trial judge—or by another judge or another jury not concerned with the ultimate issue of guilt or innocence.[1]

The Court does make one bow to federalism in its opinion: New York need not retry Jackson if it, rather than the federal *habeas corpus* court, now finds, in accordance with the new ground rules, the confession to have been voluntary. I doubt whether New York, which in Jackson's original trial faithfully followed the teachings of this Court which were then applicable, will find much comfort in this gesture.

---

[1] Whether or not the Court would permit the trial jury to render a special verdict on the issue of coercion and, having found the confession involuntary, go on to hear the evidence on and determine the question of guilt is unclear. See *ante,* pp. 379–380 and p. 391, n. 19.

Today's holding is the more surprising because as recently as 1953 the Court held precisely the opposite in *Stein* v. *New York*, 346 U. S. 156, and in 1958 and again in 1959 implicitly accepted the constitutionality of the New York rule, *Payne* v. *Arkansas*, 356 U. S. 560, 568, note 15; *Spano* v. *New York*, 360 U. S. 315, 324.[2]

I respectfully dissent.

## I.

The narrow issue of this case should not be swept up and carried along to a conclusion in the wake of broader constitutional doctrines that are not presently at stake. New York and the States which follow a like procedure do not contest or tacitly disregard either of the two "axioms" with which the Court commences its argument, *ante,* pp. 376–377. It is not open to dispute, and it is not disputed here, that a coerced confession may not be any part of the basis of a conviction. Nor is there question that a criminal defendant is entitled to a "fair hearing and a reliable determination" of his claim that his confession was coerced. *Id.,* at 377. The true issue is simply whether New York's procedure for implementing those two undoubted axioms, within the framework of its own trial practice, falls below the standards of fair play which the Federal Constitution demands of the States.

New York's method of testing a claim of coercion is described in the Court's opinion, *ante,* at pp. 377–378. It requires the trial judge "to reject a confession if a verdict that it was freely made would be against the weight of the evidence." *People* v. *Leyra*, 302 N. Y. 353, 362, 98 N. E. 2d 553, 558. The heart of the procedure, however, is reliance upon the jury to resolve disputed questions of

---

[2] Indeed, in his petition for certiorari to review the judgment of the New York Court of Appeals, 10 N. Y. 2d 780, 177 N. E. 2d 59, which this Court denied, 368 U. S. 949, the petitioner did not even challenge the constitutionality of the New York procedure.

fact concerning the circumstances in which the confession was made. Where there are facts *"permitting different conclusions* it is left for the jury, under a proper submission, to say whether or not there was coercion . . . ." *Id.*, at 364, 98 N. E. 2d, at 559.

This choice of a jury rather than a court determination of the issue of coercion has its root in a general preference for submission to a jury of disputed issues of fact, a preference which has found expression in a state legislative determination, see New York Code of Criminal Procedure, § 419,[3] and in the practice in that State "followed from an early day in a long line of cases." *People* v. *Doran,* 246 N. Y. 409, 416, 159 N. E. 379, 381, see cases cited therein at 416–417, 159 N. E., at 381–382. Thus by statutory enactment as well as by undeviating judicial approbation, New York has evinced a deliberate procedural policy. One may wonder how this Court can strike down such a deep-seated state policy without giving a moment of attention to its origins or justification.

At the core of this decision is the Court's unwillingness to entrust to a jury the "exceedingly sensitive task," *ante,* p. 390, of determining the voluntariness of a confession. In particular, the Court hypothesizes a variety of ways in which the jury, wittingly or not, "may" have disregarded its instructions, and comes up with two possibilities: (1) that the jury will base a determination that a confession was voluntary on belief that it is true; (2) that, despite its belief that a confession was involuntary, the jury will rely on the confession as a basis for concluding that the defendant is guilty. These are, of course, possi-

---

[3] "On the trial of an indictment for any other crime than libel, questions of law are to be decided by the court, saving the right of the defendant to except; questions of fact by the jury. And although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive as law what is laid down as such by the court."

bilities that the New York practice, in effect the jury system, will *not* work as intended, not possibilities that, working as it should, the system will nevertheless produce the wrong result.

The Court's distrust of the jury system in this area of criminal law stands in curious contrast to the many pages in its reports in which the right to trial by jury has been extolled in every context, and affords a queer basis indeed for a new departure in federal regulation of state criminal proceedings. The Court has repeatedly rejected "speculation that the jurors disregarded clear instructions of the court in arriving at their verdict," *Opper* v. *United States,* 348 U. S. 84, 95,[4] as a ground for reversing a conviction or, *a fortiori,* as the reason for adopting generally a particular trial practice. "Our theory of trial relies upon the ability of a jury to follow instructions." *Ibid.* Two of the Court's past cases, especially, show how foreign the premises of today's decision are to principles which have hitherto been accepted as a matter of course.

In *Leland* v. *Oregon,* 343 U. S. 790, the appellant was charged with murder in the first degree. His defense was insanity.

> "In conformity with the applicable state law, the trial judge instructed the jury that, although appellant was charged with murder in the first degree, they might determine that he had committed a lesser crime included in that charged. They were further instructed that his plea of not guilty put in issue every material and necessary element of the lesser degrees of homicide, as well as of the offense charged in the indictment. The jury could have returned any of five verdicts: (1) guilty of murder in the first

---

[4] The Court does not question the sufficiency of the trial judge's instructions in this case.

degree, if they found beyond a reasonable doubt that appellant did the killing purposely and with deliberate and premeditated malice; (2) guilty of murder in the second degree, if they found beyond a reasonable doubt that appellant did the killing purposely and maliciously, but without deliberation and premeditation; (3) guilty of manslaughter, if they found beyond a reasonable doubt that appellant did the killing without malice or deliberation, but upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible; (4) not guilty, if, after a careful consideration of all the evidence, there remained in their minds a reasonable doubt as to the existence of any of the necessary elements of each degree of homicide; and (5) not guilty by reason of insanity, if they found beyond a reasonable doubt that appellant was insane at the time of the offense charged." *Id.*, at 793–794 (footnotes omitted).

These complex instructions,[5] which required the jurors to keep in mind and apply the most subtle distinctions, were complicated still further by the law of Oregon regarding the burden of proof on an insanity defense:

". . . [The] instructions, and the charge as a whole, make it clear that the burden of proof of guilt, and of all the necessary elements of guilt, was placed squarely upon the State. As the jury was told, this burden did not shift, but rested upon the State throughout the trial, just as, according to the in-

---

[5] Their full complexity is not revealed even by the passage quoted. Since the law permitted two different verdicts of guilty of murder in the first degree, the difference being the inclusion or not of a recommendation as to punishment, a total of six possible verdicts was submitted to the jury for its consideration. *Leland* v. *Oregon, supra,* at 793, n. 4.

structions, appellant was presumed to be innocent until the jury was convinced beyond a reasonable doubt that he was guilty. The jurors were to consider separately the issue of legal sanity *per se*—an issue set apart from the crime charged, to be introduced by a special plea and decided by a special verdict. On this issue appellant had the burden of proof under the statute in question here." *Id.*, at 795–796 (footnotes omitted).

The jury found the appellant guilty and sentenced him to death.

On appeal, the appellant argued that "the instructions may have confused the jury as to the distinction between the State's burden of proving premeditation and the other elements of the charge and appellant's burden of proving insanity." *Id.*, at 800. This Court responded:

"We think the charge to the jury was as clear as instructions to juries ordinarily are or reasonably can be, and, with respect to the State's burden of proof upon all the elements of the crime, the charge was particularly emphatic. Juries have for centuries made the basic decisions between guilt and innocence and between criminal responsibility and legal insanity upon the basis of the facts, as revealed by all the evidence, and the law, as explained by instructions detailing the legal distinctions, the placement and weight of the burden of proof, the effect of presumptions, the meaning of intent, etc. We think that to condemn the operation of this system here would be to condemn the system generally. We are not prepared to do so." *Ibid.*

Every factor on which the Court relies in the present case to show the inadequacy of a jury verdict on the coerced confession issue and some factors which the Court

does not mention, were present in *Leland*: the factual issue was extremely complex, and required the jury to make a hazardous inference concerning the defendant's mental state, which inference in turn depended on exceedingly subtle distinctions; the instructions to the jury were themselves complex, their complexity being necessitated by the complexity of the issues; the crime charged was particularly heinous and likely to have aroused the community's and, in particular, the jurors' anger; the defendant had beyond question committed the act charged; the possible, and as it turned out actual, penalty was death.

I am at a loss to understand how the Court, which refused to recognize the possibility of jury inadequacy in *Leland*, can accept that possibility here not only as a basis for reversing the judgment in this case—involving far simpler questions of fact and easily understood instructions—but as the premise for invalidating a state rule of criminal procedure of general application resting on an entirely rational state policy of long standing. Why is it not true here, as it was in *Leland*, that "to condemn the operation of . . . [the jury] system here would be to condemn the system generally"? *Ibid.*

The second case is *Delli Paoli* v. *United States*, 352 U. S. 232. There the petitioner was tried jointly with four codefendants by *federal* authorities for a *federal* crime. The Government introduced in evidence the confession of another defendant, which was made after the conspiracy had ended and could not, therefore, be used against the petitioner. The jury was warned when the confession was admitted and again in the charge that it was to be considered only against the confessor and not against his codefendants. In fact, however, by reason of repeated express references to the petitioner and extensive corroborative detail, the confession implicated the petitioner as completely as it did the confessor. Rejecting the peti-

tioner's contention that admission of the confession was reversible error, the Court said:

"It is a basic premise of our jury system that the court states the law to the jury and that the jury applies that law to the facts as the jury finds them. Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense. Based on faith that the jury will endeavor to follow the court's instructions, our system of jury trial has produced one of the most valuable and practical mechanisms in human experience for dispensing substantial justice." *Id.,* at 242.

In *Delli Paoli,* the jury was instructed that it might give such credence as it chose to a clearly voluntary and apparently reliable confession when it considered its verdict as to one defendant, but that it must entirely disregard the same confession when it considered its verdict as to any other defendant; this despite the fact that the crime charged was a conspiracy and the confession named other defendants and described their acts in detail. In the present case, the Court believes that a jury "may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession," *ante,* p. 382. How can it well be said that this policy is more difficult for a jury to understand than the policy behind the rule applied in *Delli Paoli?* So too, the Court finds danger in this case "that matters pertaining to the defendant's guilt will infect the jury's findings of fact bearing upon voluntariness." *Id.,* at 383. But was there not greater danger in *Delli Paoli* that one defendant's confession of his and his codefendants' guilt would infect the jury's deliberations bearing on the guilt of the codefendants? And was

it not more "difficult, if not impossible," *ante,* p. 389, for the jurors to lodge the evidence in the right mental compartments in a trial of five defendants than here, in a trial of one?

The danger that a jury will be unable or unwilling to follow instructions is not, of course, confined to joint trials or trials involving special issues such as insanity or the admissibility of a confession. It arises whenever evidence admissible for one purpose is inadmissible for another, and the jury is admonished that it may consider the evidence only with respect to the former. *E. g., Moffett* v. *Arabian American Oil Co., Inc.,* 184 F. 2d 859. More broadly, it arises every time a counsel or the trial judge misspeaks himself at trial and the judge instructs the jury to disregard what it has heard. *E. g., Carr* v. *Standard Oil Co.,* 181 F. 2d 15. In short, the fears which guide the Court's opinion grow out of the very nature of the jury system.

Jury waywardness, if it occurs, does not ordinarily trench on rights so fundamental to criminal justice as the right not to be convicted by the use of a coerced confession. The presence of a constitutional claim in this case, however, does not provide a valid basis for distinguishing it from the other situations discussed above. There is not the least suggestion in the Court's opinion that the nature of the claim has anything to do with the trustworthiness of the evidence involved; nor could there be, since the Court's rule is entirely unconnected with the reliability of a confession. Nor, as the *Delli Paoli* and *Leland* cases amply attest, are factual issues underlying constitutional claims necessarily more beyond the jury's competence than issues underlying other claims which, albeit nonconstitutional, are nevertheless of equally vital concern to the defendant involved. Finally, *Delli Paoli* was tried in the federal courts, where this Court has general "supervisory authority" over the administration of crim-

inal justice, *McNabb* v. *United States,* 318 U. S. 332, 340–341, obviating any suggestion that this Court has *power* to act here which it lacks in other situations.

To show that this Court acts inconsistently with its own prior decisions does not, of course, demonstrate that it acts incorrectly. In this instance, however, the Court's constant refusal in the past to accept as a rationale for decision the dangers of jury incompetence or waywardness, because to do so would be to "condemn the system generally," *Leland, supra,* at 800, does demonstrate the lack of constitutional foundation for its decision. It can hardly be suggested that a rationale which the Court has so consistently and so recently rejected, even as the basis for an exercise of its supervisory powers over federal courts, and which even now it does not attack so much as disregard, furnishes the clear constitutional warrant which alone justifies interference with state criminal procedures.

## II.

The hollowness of the Court's holding is further evidenced by its acceptance of the so-called "Massachusetts rule," see *ante,* pp. 378–379 and note 8, under which the trial judge decides the question of voluntariness and, if he decides against the defendant, then submits the question to the jury for its independent decision.[6] Whatever their theoretical variance, in practice the New York and Massachusetts rules are likely to show a distinction without a difference. Indeed, some commentators, and sometimes the courts themselves, have been unable to see two distinct rules.[7]

---

[6] *E. g., Commonwealth* v. *Sheppard,* 313 Mass. 590, 604, 48 N. E. 2d 630, 639–640.

[7] The majority of this Court itself proclaims its inability to distinguish clearly between the States which do and those which do not follow the rule now found by it to be constitutionally required. See

The Court finds significance in the fact that under the Massachusetts rule "the judge's conclusions are clearly evident from the record," and "his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record." *Ante,* pp. 378–379. It is difficult to see wherein the significance lies. The "judge's conclusions" are no more than the admission or exclusion of the confession. If the confession is admitted, his findings of fact, *if* they can be ascertained, will, realistically, either have no effect on review of the conviction for constitutional correctness or will serve only to buttress an independent conclusion that the confession was not

---

*ante,* pp. 378–379, note 9. In Appendix A to the Court's opinion, the rules in 14 States are listed as "doubtful."

Annotations in 85 ALR 870 and 170 ALR 567 recognize only two general practices, dividing the States into those in which "voluntariness [is] solely for [the] court" (the so-called "orthodox" rule, *ante,* p. 378) and those in which "voluntariness [is] ultimately for [the] jury," with some jurisdictions listed as "doubtful." Massachusetts and New York are both listed as jurisdictions in which the question is ultimately for the jury. See also Ritz, Twenty-Five Years of State Criminal Confession Cases in the U. S. Supreme Court, 19 Wash. & Lee L. Rev. 35, 55–57 (1962). Although recognizing the difference between the two rules, Professor Ritz states that "the distinctions in the different views may be more semantical than real." *Id.,* at 57 (footnote omitted). He asks:

"Is the trial judge's finding under the New York View that a confession is 'not involuntary' so that it may go to the jury very much different from the trial judge's finding under the Massachusetts View that a confession is 'voluntary,' with the jury given an opportunity to pass again on the same question?" *Id.,* at 57, n. 120.

In Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317 (1954), the distinction between the rules is defended, but the author states that "the formal distinction between the New York and Massachusetts procedures is often blurred in appellate opinions," *id.,* at 323–324, and that ". . . it is sometimes difficult to determine which of two procedures is being approved, or whether a distinction between the two is even recognized." *Id.,* at 324 (footnote omitted).

coerced.   Indeed, unless the judge's findings of fact are stated with particularity, the Massachusetts rule is indistinguishable from the New York rule from the standpoint of federal direct or collateral review of the constitutional question.   Whichever procedure is used, the reviewing court is required to give weight to the state determination and reverse only if the confessions are coerced as a matter of law.   See *Lisenba* v. *California,* 314 U. S. 219, 236–238; *Payne* v. *Arkansas,* 356 U. S. 560, 561–562.[8]

The heart of the supposed distinction is the requirement under the Massachusetts rule that the judge resolve disputed questions of fact and actually determine the issue of coercion; under the New York rule, the judge decides only whether a jury determination of voluntariness would be "against the weight of the evidence."   See, *supra,* p. 428.   Since it is only the exclusion of a confession which is conclusive under the Massachusetts rule, it is likely that where there is doubt—the only situation in which the theoretical difference between the two rules would come into play—a trial judge will resolve the doubt in favor of admissibility, relying on the final determination by the jury.

The fundamental rights which are a part of due process do not turn on nice theoretical distinctions such as those existing between the New York and Massachusetts rules.

### III.

My disagreement with the majority does not concern the wisdom of the New York procedure.   It may be that in the abstract the problems which are created by leaving to the jury the question of coercion should weigh more heavily than traditional use of the jury system.   Be that

---

[8] If the Court's point is that under the New York rule there is no way of knowing whether the jury has addressed itself specially to the coerced confession issue at all the point simply raises again the fear of jury error discussed in the first section of this opinion.

as it may, "the states are free to allocate functions as between judge and jury as they see fit." *Stein, supra,* at 179. I, like the Court in *Stein,* believe that this Court has no authority to "strike down as unconstitutional procedures so long established and widely approved by state judiciaries, regardless of our personal opinion as to their wisdom." *Ibid.* This principle, alone here relevant, was founded on a solid constitutional approach the loss of which will do serious disservice to the healthy working of our federal system in the criminal field.

It should not be forgotten that in this country citizens must look almost exclusively to the States for protection against most crimes. The States are charged with responsibility for marking the area of criminal conduct, discovering and investigating such conduct when it occurs, and preventing its recurrence. In this case, for example, the crime charged—murder of a policeman who was attempting to apprehend the defendant, in flight from an armed robbery—is wholly within the cognizance of the States. Limitations on the States' exercise of their responsibility to prevent criminal conduct should be imposed only where it is demonstrable that their own adjustment of the competing interests infringes rights fundamental to decent society. The New York rule now held unconstitutional is surely not of that character.

## IV.

A final word should be said about the separate question of the application of today's new federally imposed rule of criminal procedure to trials long since concluded. The Court apparently assumes the answer to this question, for I find nothing in its opinion to suggest that its holding will not be applied retroactively.

To say, as the Court does, that New York was "not without support in the decisions of this Court," *ante,* p. 395, when it tried Jackson according to its existing rules

does not give the State its due. Those rules had been directly considered and explicity approved by this Court in Stein just seven years before Jackson was tried. They were implicitly reaffirmed by this Court in *Spano, supra,* little more than one year before the trial. If the concept of due process has as little stability as this case suggests, so that the States cannot be sure from one year to the next what this Court, in the name of due process, will require of them, surely they are entitled at least to be *heard* on the question of retroactivity. See my dissenting opinion in *Pickelsimer* v. *Wainwright,* 375 U. S. 2.

I would affirm.[9]

---

[9] Like the Court, *ante,* p. 392, n. 20, I reject petitioner's contention that looking only to the undisputed evidence his confession must be deemed involuntary as a matter of law.