David T. Gibbons, J.
In this Huntley-Mir anda hearing brought to suppress alleged statements of a youthful offender charged with the crime of grand larceny arising out of an alleged car theft, the court makes the following findings of fact and conclusions of law. (Code Crim. Pro., § 813-f et seq.)
At about 8:00 p.m. on August 28, 1967, while police officers Nolan and Vincent were on motor patrol, proceeding westbound on Hempstead Turnpike in Farmingdale, their attention was directed to the occupants of a 1962 Chevrolet which was being driven in the opposite direction. The policemen turned their car about and began to pursue the other car.
The three occupants of the car were apprehended by the police at about 8:10 p.m. while they were leaving a delicatessen store on Merrick Boad, Farmingdale. It was then ascertained that the car had been operated by one, Joseph M-, and that Bichard C-■ was a passenger sitting on the front seat, while the defendant was a passenger in the rear.
The defendant, William O-is an orphan, 18 years of age, and at the time of the alleged occurrence he was unemployed *359 and a recipient of public welfare. The defendant’s education ended at the eighth grade. He boards in the foster home of a Mr. C-, the father of codefendant, Richard 0-, at his residence in Levittown.
As a result of inquiry by the police at the scene, it was disclosed that, between the time the car was first sighted and the boys were found, the car was involved in a collision with another car and was abandoned.
Patrolman Nolan stated that while on the street he gave the required Miranda warnings (infra) to the trio and that Richard G-- then admitted that the car was stolen and that it had been abandoned on Sullivan Street.
Patrolman Nolan also testified that at this time the defendant was ‘ ‘ quite drunk ’ ’ and that “ he had slurred speech. He didn’t appear to be in complete control of his faculties. He wasn’t aware of what time it was or exactly what was going on ’ ’. When the officer was questioned as to what behavior indicated that the defendant was not aware of what was going on, he testified, “ his lethargic attitude, an attitude of I don’t care, it doesn’t appear to me like he really cared what was going on is what I should say ”. He observed also that the defendant’s eyes were watery, glazed and that his speech was slurred.
When questioned as to the defendant’s response to him on the street after the Miranda warning was given, he said that the defendant remarked, “ I don’t want a lawyer, I didn’t do nothing ’ ’.
The police then took the three young men to the police station where they were turned over to Detective Madden at about 9:30 p.m.
At about 9:45 p.m., Mr. C-, with whom the defendant was living, the father of Richard 0-, arrived at the station house and was present when his son was interrogated as a juvenile in a room separate and apart from the one in which the defendant and M-- were held.
After Richard C-signed a statement he was permitted to leave with his father. The defendant was aware of this. After Richard 0- left with his father, the detective turned his attention to the defendant and his other companion, Joseph M-, at about 10:30 p.m.
During the ensuing interrogation by Detective Madden which ended shortly after 11:00 p.m., he gave them large printed cards containing purported Miranda warnings. When the defendant told him that he could not read, the detective read from a paper taped to a locker, containing the same written matter, and which he characterized as one of the 11 old cards ’ ’. The wording was *360 in the first person and read as follows: “ I have been advised that I need not give any statement and that any statement I do give may be used as evidence and that I have a right to call a lawyer and that if I cannot afford a lawyer one will be appointed by the court. After being aware and having been advised of these rights I hereby waive these said rights ”.
He described their behavior at this time during the questioning as “ very jovial ” and that “ at this point still continuously laughing and behaving in a drunken fashion ”.
When the defendant told him that he did not understand the advice given, the detective observed that “ it did not sink into 0-'’s head ” and he then read the correct Miranda warnings from a small card which he characterized as one of the “ new cards ”.
After these warnings were given, the defendant was concerned about having an attorney, because he was on public welfare and without funds. In this regard, the detective testified: “ I told him that if he could not afford a lawyer I said we would get him — get one for him. And he said, ‘ I’m on welfare.’ So I said, well, I said,6 We’ll contact Mr. C-and have him appear tomorrow morning. ’ I says, 1 and he ’ll help you. ’ ’ ’
The detective then told the defendant that “ Mr. C-would' be in court the next morning with the judge to get him a lawyer. ’ ’ Thereupon the defendant made an oral statement which was then typewritten by the detective. A purported Miranda warning in the form above quoted was again read to the defendant from the typewritten statement. He declined to sign.
All in all, the detective testified that the defendant was advised of his rights 6 ‘ possibly six times ’ ’. In addition to the advices read from the so-called ££ old cards ” referred to above, the detective testified to another advice given in the following form : £ ‘ That he had the right to remain silent; that he did not have to answer any questions or sign anything. And, if he couldn’t afford a lawyer he would be furnished one by the Legal Aid Society ”. Heedless to say, it is apparent that this advice is also incorrect in that, among other things, it fails to apprise the defendant of his present right to counsel.
Inasmuch as the detective stated that he gave ££ possibly six ” warnings, apart from those mentioned above, there is no way for the court to determine favorably to the People that the two additional oral warnings given by him did not tend to further confuse the defendant. The People have not set forth the language or substance of such, and it, therefore, cannot be said beyond a reasonable doubt that they did not add more confusion to an already confused situation.
*361 Irrespective of the fact that patrolman Nolan’s warning was given to a boy characterized by him as drunk and not in possession of his faculties, and for this reason incomprehensible to him, no waiver ensued, because this warning was not followed closely by a statement, and before any statement was given there intervened several hours and several additional warnings by the detective, one of which, the court finds, if given alone and under different circumstances would be proper; three other warnings were improperly given, and two additional warnings were unaccounted for, and which, the court cannot say beyond a reasonable doubt, were properly given.
From all of this, the court finds that the defendant was confused and did not understand his rights under the Miranda rule, and that although he expressed an awareness for the need of counsel, the entire explanation by the detective was inclined toward the impression that he would have counsel provided the next day in court. It was not made clear to Mm that he was entitled to counsel at the questioning, and thereby violated the Miranda mandate that “ the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate ”.
After considering the defendant’s impaired mental faculties due to his drunkenness, his age and intelligence and his difficulty with reading, coupled with the resulting confusion created in his mind by the different Miranda warnings given to him by the detective, and the incorrect explanations as to when he may have counsel, the court concludes that the defendant could not, and did not, “ knowingly and intelligently waive these rights and agree to answer questions or make a statement ’ ’, as required by Miranda v. Arizona (384 U. S. 436).
Apart from defendant’s inebriated condition which impaired his ability to comprehend the Miranda advice, the detective’s explanation as to when he may have counsel furnished, was alone enough to render his statements inadmissible as a violation of the requirements of Miranda v. Arizona (supra).
In Fendley v. United States (384 F. 2d 923), in passing upon such incorrect explanation, the court held: “ Although the agent stated that he also advised the defendant that ‘ he had the right to consult an attorney or anyone else before making a statement, ’ and that ‘ if he did not have any money to obtain an attorney that the Judge, the Court, would appoint one for him when he went to court, ’ the defendant was not advised, as Miranda requires, of his right to have court-appointed counsel present during the interrogation ”,
*362 In concluding, the court is not unmindful of People v. Schompert (19 N Y 2d 300), which holds that self-induced intoxication will not, in and of itself, preclude a confession as involuntary because given while in such state, where its trustworthiness is confirmed by the existence, upon investigation, of the facts contained therein. (Jackson v. Denno, 378 U. S. 368; People v. Huntley, 15 N Y 2d 72; Code Crim. Pro., § 395.)
Here, although the statement may have been admissible on the basis of voluntariness, notwithstanding the defendant’s state of intoxication, nevertheless the issues are whether under the circumstances he understood the Miranda advice sufficiently to knowingly and intelligently waive his rights; and whether he was misled or confused by the incorrect explanation as to when counsel would be furnished for him, and therefore was unable to effectively waive his rights. These questions are resolved in favor of the defendant, and the defendant’s motion must be granted.
Accordingly, the court finds that the People have failed to establish compliance with the requirements of Miranda v. Arizona (supra) beyond a reasonable doubt.
It is therefore,
Ordered that all oral and written statements made by the defendant to law enforcement officers be and the same hereby are suppressed and may not be used on the trial hereof.