**Willie Lee JOBE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43321.**

Court of Criminal Appeals of Texas.

Jan. 13, 1971.

Rehearing Denied March 10, 1971.

W. John Allison, Jr., Dallas (on appeal only), for appellant.

Henry Wade, Dist. Atty., Harry J. Schulz, Jr., W. T. Westmoreland, Jr., Edgar Mason and John B. Tolle, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ROBERTS, Judge.

The conviction is for murder; the punishment, life.

The appellant contends that the trial court erred in holding that his oral confession was voluntarily made and that the fruits thereof were admissible in evidence as a matter of law.

Detective Preston Parks of the Dallas Police Department testified that on November 5, 1967 in connection with the murder case involving the death of Joe C. Williams he went to the intersection of Bondstone and Waterview Streets in Dallas, Texas across the street from a house owned by the Leslie Hart family. Then he and his partner, Detective George Thomason went to Denver, Colorado, where aided by the Denver police, they attempted to locate the Harts. The Harts were located in the town of Castle Rock, about 25 miles from Denver, and after a conversation with the Harts, the officers went back to Denver looking for a Willard Lee Jobe, who prior to talking with the Harts, Parks did not know of at all.

The officers, accompanied by the Harts, went directly to the Ramada Inn Motel in Denver where the officers determined that the appellant was not in his room. From a bellboy the officers obtained information about a restaurant at Syracuse and Colfax Streets in Denver.

Parks testified further that he approached the person who he identified as the appellant on a parking lot at Syracuse and Colfax Streets. The appellant was talking to two Denver detectives. Parks asked the appellant if he was Bill Jobe, and the appellant answered, "No, my name is Willard Jobe." Parks then said, "My name is Preston Parks and I'm a detective from the Dallas Police Department and I want to talk to you about the murder of Joe C. Williams." The appellant then told Parks that he did not know anything about Joe

C. Williams. At that time the following conversation occurred:

"I (Parks) said that 'I have reason to believe that that thirty-two automatic of Barbara Hart might have been used to kill him' and he said, 'I'll tell you all about it,' and said, 'She didn't have anything to do with it,' and said, 'I'll tell you exactly what happened and I'll take you out there to the motel and get the gun.' And I said, 'We'll have to get that gun,' and he said, 'No, I'll take you out there.' And I said, 'No, we can't do that because you have certain rights.'"

Parks then gave the appellant the "Miranda" warnings,[1] and the appellant said, "You don't need a search warrant; I'll take you out there and show you where the gun is." Parks, the appellant, and the Denver officers then went to the parking lot of the appellant's motel where the appellant, after first reading it, signed a "waiver of a search warrant." At that time the officers, accompanied by the appellant, entered the motel room and the following transpired:

"Well, he opened the door and he went in a little bit ahead of us there and George Thomason, my partner, and I were a little bit behind him and he went to the dresser and said, 'It's in here.' And he reached for the dresser drawer to open it and my partner said, 'Hold on. Stand back and let my partner get it.' And he said, 'Well, it's in that drawer there.' And so he stepped back then and I opened the drawer and reached in and pulled out this thirty-two Biretta and there was a piece of clothing lying there and I could see that there was something else under it and I went to reach in there again and he said, 'Be careful, there's a forty-five there and it's loaded and there's one in the chamber,' and I took this cloth out and unrolled it and

1. "I (Detective Parks) told him he didn't have to say anything about this case and that he didn't have to talk to us about it and that he could have a lawyer at anytime and that if he started talking to us about the case, he could stop at anytime and I said, 'You don't have to make any statements, written or oral,' and he could have a lawyer and if he couldn't afford a lawyer, the state would appoint him a lawyer."

there was a key, a motel key, in there for room 212 from a motel here in Dallas and there was an envelope and it was sealed and on the outside was a name, Willard Jobe and Barbara Hart, written on it."

The appellant then told Parks that the Biretta pistol was Mrs. Hart's gun and that it was the gun he used to shoot Joe Williams along with other information that led to the recovery of the money the appellant took off Williams, the clothing worn by the appellant when he shot Williams, and the information that he had dumped Williams' briefcase in Lake Texoma.

Parks further testified that the appellant's statements were voluntary and were in no way induced by him, and that the appellant was not under arrest until he began making his statements to the officers and had said that he had committed a crime.

The testimony of Detective John E. Meritzky of the Denver, Colorado Police Department reflects that on November 5, 1967 he met officers Parks and Thomason of the Dallas Police Department at the parking lot of the Ramada Inn Motel in Denver, Colorado. After which they all went to the desk and asked if a Bill Jobe was registered there; they were informed there was a Jobe registered there, and they went and opened the room with a key. The officers then searched the room only to the extent of determining if Jobe was there. After leaving the room, the officers proceeded to where they had information that the appellant might be. Meritzky and Detective Hurlburt drove in one car and McCormick, Parks, and Thomason followed. At a parking lot they pulled up to the appellant sitting in an automobile. Hurlburt got out with his gun in his hand, and Meritzky had his badge in his hand as they opened the car door and frisked the appellant. Parks and Thomason arrived "a minute and a few seconds" later as the appellant was being frisked and Meritzky was searching the glove compartment. Prior to the arrival of Parks and Thomason the only conversation they had with the appellant was the asking of his name.

Meritzky testified further:

"A I heard Parks ask him if he was Bill Jobe and he said he was Willard Jobe and I was standing just adjacent to him and Parks showed his identification and badge and said he wanted to talk with him about a murder of a Mr. Williams and he said he didn't know anything about it and Parks said he had reason to believe that he did know something about it and he inquired about a gun that was used that was owned by a Mrs. Hart and the lad told him, 'I have the gun and I'll take you to it.'"

The appellant did not testify in his own behalf.

Testifying on behalf of the appellant, Ron Wilson, bellboy at the Denver Ramada Inn Motel, stated that when the officers first entered the appellant's motel room and determined that the appellant was not there he saw officers look into the drawers and discover two pistols, a .32 caliber and a .45 caliber. After determining that the appellant was not in the apartment and discovering the pistols, the officers said, "We'll leave things as they are and we'll go out and look for him; he's not here."

After a hearing outside the presence of the jury, the trial court found that the appellant's oral confession to Detective Parks was voluntary and was admissible, and in the court's charge submitted the voluntariness of the confession to the jury.

The state's evidence reflects that the appellant's voluntary statements made to Detective Parks led to the recovery of the murder weapon and the fruits of the crime. These statements were admissible as an oral confession under the provisions of Art. 38.22, Vernon's Ann.C.C.P.; Rayford v. State, Tex.Cr.App., 423 S.W.2d 300; and Buchanan v. State, Tex.Cr.App., 453 S.W.2d 479.

According to Parks' testimony, the appellant's statements made prior to being warned were made in response to investigatory questions propounded prior to the appellant's arrest. The decision to arrest the appellant and take him into custody was made after the appellant's statements.

At the time the trial court admitted the appellant's oral statements the following occurred:

"The Court: Take this down, Mr. Reporter: The Court finds that after hearing the testimony of Officer Preston Parks out of the presence and hearing of the jury, that under Article 3822, Section 1, subsection E, that this Defendant made an oral confession to Officer Parks compatible with and comparable to and in compliance with subsection E. The Court finds that the oral confession was voluntarily made and holds that it is admissible as a matter of law and fact and may be presented to the jury, at least in the voluntary aspect of the oral confession."

The court made and entered the following written order admitting said statements:

"The Court finds that after hearing the testimony of Officer Preston Parks, out of the presence and hearing of the jury, under Article 3822, Section 1, Section E that this defendant made an oral confession that is compatible with and comparable to and in compliance with Section E. Court finds that the oral confession was voluntarily made and that it is admissible as a matter of law and fact and may be presented to the jury at least in the voluntary aspect of the oral confession.

/s/ John Mead
JUDGE, Criminal District Court No. 4 Dallas County, Texas"

The trial court did not reversibly err in admitting these statements in evidence. Rolan v. State, 170 Tex.Cr.R. 88, 338 S.W. 2d 457; Glass v. State, Tex.Cr.App., 402 S.W.2d 173; Newhouse v. State, Tex.Cr. App., 420 S.W.2d 729.

The appellant's ground of error is overruled.

The judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

On rehearing appellant vigorously reurges his claim that the trial court erred in holding his oral confession was voluntarily made and the fruits thereof admissible.

He contends that the recitation of the facts in the opinion on original submission supports his position and is at variance with the conclusion reached by this court.

Perhaps an explanation of what transpired at the trial will clarify the situation.

When the State commenced to elicit testimony from Officer Preston Parks as to appellant's oral confession, the jury, following objection, was removed. Thereafter a Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, type hearing was conducted. See Article 38.22, V.A.C.C.P. By virtue of Parks' testimony the State laid the predicate for the introduction of the oral confession. The witness Parks was then cross-examined at some length. At the conclusion of his testimony the State called no other witnesses, and the appellant called none nor did he take the stand for the limited purpose of testifying as to the voluntariness and admissibility of his oral confession. Having only Officer Parks' testimony before him, the trial judge found the confession to have been voluntarily given and admissible in evidence. The trial judge dictated his findings into the record, had the same reduced to writing and filed among the papers of the cause. Thereafter Parks was permitted to relate the oral confession to the jury.

Only after the oral confession was before the jury did Detective Meritzky of the Denver Police Department testify or did the appellant offer any witnesses.

In Lopez v. State, Tex.Cr.App., 384 S.W. 2d 345, this court wrote:

"After a confession has been admitted in evidence to the jury, the defendant may still adduce evidence relating to its voluntariness, which evidence may be considered by the trial judge with other evidence on the issue of its voluntariness.

"If the trial judge concludes from all the evidence that the confession should not have been admitted, he will withdraw it. Otherwise the jury may and shall, upon request of the defendant, be instructed to the effect that they cannot consider the confession unless they believe beyond a reasonable doubt that it was voluntarily made."

It is obvious from the record that the trial judge did not conclude from the evidence offered after the confession was admitted that the confession should be withdrawn, and we find no request from the appellant that he do so.

The issue of voluntariness as raised by the evidence before the jury was submitted to them under instructions to which the appellant addressed no objections.

Remaining convinced this cause was properly decided on original submission, appellant's motion for rehearing is overruled.